In the Matter of the Claim of MILDRED RICE, Respondent, against WILLIAMS & COMPANY et al., Appellants. WORKMEN's COMPENSATION BOARD, Respondent.

Third Department, June 16, 1955.

*John M. Cullen* for Special Disability Fund, appellant.

*Ralph S. Stowell, Joseph D. Edwards* and *Charles A. Cooper* for Williams & Company and another, appellants.

*T. A. Quinn* for claimant-respondent.

*Jacob K. Javits, Attorney-General (Daniel Polanksy* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

IMRIE, J.   All appellants agree in the claims that the Workmen's Compensation Board's award of death benefits in this case lacks substantial probative evidence to support it. Beyond that, the appellant, Special Disability Fund, contends that the decision of the board imposing liability on it under subdivision 8 of section 15 of the Workmen's Compensation Law is contrary to law.

Deceased employee was general maintenance man at a garden apartment development. One of the maintenance details was the removal of carbon accumulating underneath the burners in oil furnaces. This work was performed at times by the superintendent of the property and at other times by decedent. It involved the process of chopping away the carbon with a heavy crowbar. In the operation the bar was inserted through an opening in the furnace some eight to twelve inches above the floor, requiring the operator to stoop down and to work in a position involving severe physical strain. Deceased claimed that on July 18, 1949, while chopping at the carbon with the crowbar, he fell down, could not get up for a couple of minutes, and then crawled up the steps. That evening he informed the superintendent of the property, who was not on duty that day, that his heart bothered him, that he could not continue to work, and that the doctor wanted

him to go to the hospital. He gave the superintendent no history of the accident or injury. He had not told the doctor whom he visited that afternoon of the furnace incident, nor did he do so on the succeeding day at the hospital, where a diagnosis of coronary insufficiency was made. He never returned to his work, was readmitted to the hospital on September 1, 1950, and died there on September 13, 1950, the principal cause of death being noted as myocardial infarction.

In our opinion the evidence in the record supports the finding of the accident and of death as the natural and unavoidable result thereof, though, as appellants argue, decedent gave no sworn testimony. He filed compensation claims in November, 1949, and March, 1950. He could not, of course, testify in the death case, but he was present at three hearings during his lifetime in his compensation proceeding when he could have been examined. His " hearsay " statements in his claims, to his son-in-law, and to his doctors were sufficiently corroborated by the established facts and circumstances, to the end that there can be slight doubt of their truth. There was no evidence to show that an accident did not occur as he said. The testimony of the superintendent as to the method of cleaning carbon deposits and as to decedent's duty with respect thereto, decedent's complaint to him, and the medical evidence of a heart attack on that date are all corroborative.

This brings us to the board's bare finding that the case " comes within the provisions of Section 15, Subdivision 8 of the Workmen's Compensation Law ". The legislation there referred to was designed to encourage the employment of partially disabled persons. Included in the pattern is a provision for certain reimbursements to employers from a Special Disability Fund for awards paid to such partially disabled persons upon subsequent disability, but within the scope of and subject to the limitations of the statute.

The deceased employee had previously lost his right eye, which was a " permanent physical impairment " within the purview of said subdivision 8. The employer knew of such loss, such knowledge constituting a basic requirement for reimbursement by the Special Disability Fund in appropriate circumstances. (*Matter of Baron* v. *Nobar Realty Corp.*, 281 App. Div. 295; *Matter of Zyla* v. *Juilliard & Co.*, 277 App. Div. 604.)

Paragraph (e) of subdivision 8 of said section 15 provides that if an employee with a pre-existing " permanent physical impairment " incurs a subsequent injury through an accident arising out of and in the course of his employment, resulting in his

death, and " it shall be determined that either the injury or death would not have occurred except for such pre-existing permanent physical impairment," the employer and its carrier shall pay the required benefits and be reimbursed from the Special Disability Fund after 104 weeks.

In this case there is no determination by way of formal finding which accords with the quoted requirement of the statute. In the board's memorandum of decision, dated April 20, 1953, the employer's knowledge of the employee's loss of an eye is referred to, but there is no determination that such physical impairment contributed in any manner to the accident or death. In that decision reference is made to an occurrence of February 18, 1949, resulting in an anterior myocardial infarction related to the cardiac injury sustained on July 18, 1949, leading to the inference that the board viewed that condition as constituting such a pre-existing physical impairment as to make the Special Disability Fund liable for reimbursement.

Clearly, no knowledge of such myocardial infarction was brought home to the employer. Further, the incidence of such condition was in the course of decedent's employment by this employer, which had continued since, at the latest, the time his superintendent, Norton, arrived on the job in March, 1948.

Reimbursement is sought for one of two reasons, the loss of vision of the right eye or the cardiac impairment. Neither the loss of the eye nor the incidental items of a foot and finger injury have been or could be found to have played any part in the employee's injury and death. The cardiac impairment does not fall within the purview of the statute as a basis for reimbursement.

The words " such pre-existing permanent physical impairment " in paragraph (e) of subdivision 8, by context and court interpretation, can refer only to the impairment subject to which decedent was employed and of which the employer had knowledge. (*Matter of Baron* v. *Nobar Realty Corp., supra; Matter of Zyla* v. *Juilliard & Co., supra.*) The legislation embodied in subdivision 8 of section 15 of the Workmen's Compensation Law made no basic change in the general rule that the employer takes the employee as he finds him. Clearly, it is not designed to carry reimbursement for any accident which may occur to a partially disabled or physically impaired workman after he has been employed as such. Such a construction could result in an advantage to the employer of a partially disabled or physically handicapped workman beyond that contemplated by the Legislature.

So much of the decision as determines that this claim comes within the provisions of subdivision 8 of section 15 of the Workmen's Compensation Law and that the employer and carrier are entitled to reimbursement from the Special Disability Fund should be reversed and the matter remitted to the Workmen's Compensation Board to make an award without provision for reimbursement, with costs to said Special Disability Fund to be paid by the employer and its insurance carrier and Workmen's Compensation Board, and with costs to Workmen's Compensation Board to be paid by the employer and its insurance carrier.

FOSTER, P. J., COON, HALPERN and ZELLER, JJ., concur.

So much of the decision as determines that this claim comes within the provisions of subdivision 8 of section 15 of the Workmen's Compensation Law and that the employer and carrier are entitled to reimbursement from the Special Disability Fund reversed and the matter remitted to the Workmen's Compensation Board to make an award without provision for reimbursement, with costs to said Special Disability Fund to be paid by the employer and its insurance carrier and the Workmen's Compensation Board, and with costs to the Workmen's Compensation Board to be paid by the employer and its insurance carrier.