[Civ. No. 17044. First Dist., Div. One. Sept. 5, 1956.]

FRANK S. URQUIZA, Petitioner, v. INDUSTRIAL ACCI-
DENT COMMISSION et al., Respondents.

Phoenix, Kennedy & Durham for Petitioner.

Edmund G. Brown, Attorney General, Gerald F. Carreras,
Deputy Attorney General, Everett A. Corten and Daniel C.
Murphy for Respondents.

BRAY, J.—Petitioner seeks review and the annulment of
an order of the Industrial Accident Commission determining
that prior to an industrial injury he had no permanent dis-
ability entitling him to compensation from the Subsequent
Injuries Fund.

## QUESTIONS PRESENTED

1. Does section 4751, Labor Code,[1] apply to an injured employee who suffers from a prior existing disease or physical condition which in no wise was work disabling?

2. Did the employer know of the preexisting injury?

## RECORD

While working for the L. C. Smith Company petitioner received an industrial injury which cost him the sight of one eye. The commission, in effect, found that the injury in no wise lighted up or affected the previous condition hereinafter discussed, and awarded petitioner a 36½ per cent disability. Petitioner does not question this award. Petitioner then sought a ruling that the combined effect of his previous "disability" and his industrial injury equaled more than 70 per cent of total disability and that therefore he was entitled to compensation from the Subsequent Injuries Fund. It is from the commission's order, after reconsideration, denying him this relief, that petitioner appeals.

On April 25, 1944, petitioner was committed to Agnew State Hospital. His condition was diagnosed as dementia praecox, paranoid type. September 25th he was granted an indefinite leave of absence from the hospital. Sometime in 1947 he returned to work for Smith and continued to work there steadily until his injury.[2] On February 8, 1948, he was discharged from Agnew as "improved."

All of the medical men who examined petitioner after his injury agree that at all times subsequent to his commitment to Agnew and at the time of his injury petitioner was suffering from chronic dementia praecox, paranoid type, but that his condition was not a disabling factor in the field of normal labor. Petitioner worked as a laborer and truck driver. Since his injury he is still suffering from the mental

---

[1]That section reads: "If an employee who is permanently partially disabled receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree of disability caused by the combination of both disabilities is greater than that which would have resulted from the subsequent injury alone, and the combined effect of the last injury and the previous disability or impairment is a permanent disability equal to 70 per cent or more of total, he shall be paid in addition to the compensation due under this code for the permanent partial disability caused by the last injury, compensation for the remainder of the combined permanent disability existing after the last injury as provided in this article."

[2]As will later be discussed, the record does not show for whom he was working at the time of his hospital commitment. Apparently he had worked for Smith at some time prior to his 1947 employment.

condition. There is a disagreement among the medical men as to whether the combination of his mental condition and the effects of his eye injury will cause him to be permanently unemployable. At the present time he appears to be so. The commission took the position that as his previous condition had not made him "labor disabled," that is, had in nowise interfered with his constant employment since 1947, he had not been "permanently partially disabled" in the meaning of section 4751.

1. *The Application of Section 4751, Labor Code.*

In *State* v. *Industrial Acc. Com.,* 135 Cal.App.2d 544 [288 P.2d 31], we considered that it did not apply to an employee whose condition prior to his industrial injury was not symptomatic but only asymptomatic and was unknown to both himself and his employer. We pointed out that the requirement that the previous condition must be known to the employer is the rule in New York, New Jersey and Alaska. (We found and now find no jurisdiction where the rule is to the contrary.[3]) In our previous decision, page 553, we pointed out that in the "Subsequent Injuries Fund Report of the Subcommittee on Finance and Insurance" (vol. 15, No. 7, 1953-1955 Assembly Interim Committee Reports) attention was called "to the wide variety of pathologies (most of them asymptomatic) which had been urged as a basis for commission awards against the Subsequent Injuries Fund," included in which was "hysteria, and other forms of mental derangement," and that the report stated that to apply the provision for preexisting diseases to more than easily recognizable permanent disabilities would convert the Subsequent Injuries law into a state health insurance plan (applicable only to one class—the employed),

---

[3]In addition to the authorities to that effect stated in the opinion, the following are to the same effect: *Bellospirito* v. *Smith* (1955), 285 App.Div. 912 [137 N.Y.S.2d 601]; *Rice* v. *Williams & Co.* (1955), 286 App.Div. 299 [142 N.Y.S.2d 109]; *Young* v. *Waterbury* (1955), 286 App.Div. 900 [142 N.Y.S.2d 148]; *Warboys* v. *Kraft Foods Co.* (1955), 286 App.Div. 1043 [144 N.Y.S.2d 829]; *Weller* v. *Imperial Paper & Color Corp.* (1955), 286 App.Div. 896 [142 N.Y.S.2d 255]. In *Baron* v. *Nobar Realty Corp.* (1953), 281 App.Div. 295 [120 N.Y.S.2d 146], the court said concerning Subsequent Injuries Fund provisions: "It is to be noticed that the statutory text says nothing about hiring an employee 'with knowledge of any pre-existing permanent physical impairment.' What it relates to is a 'permanent physical impairment' . . . In making a practical construction of this language, however, the court has held that the kind of physical impairment the Legislature had in mind was one of which the employer had knowledge since the statute was designed to encourage the employment of partially disabled people and an obscure disability unknown to the employer would present no handicap to employment." (Pp. 148-149 [120 N.Y.S.2d].)

and would provide life annuity benefits when the combined effect of a previous disease and a subsequent injury results in a permanent disability of 70 per cent or more of the total. We then stated that such a legislative intent should not be inferred; it must clearly appear. ▆▆ We affirm the statement made in that case (p. 553): "We conclude that section 4751, Labor Code, was not intended to apply to asymptomatic disease processes which were unknown to both employee and employer and which in no wise interfered with the employee's ability to work."

### 2. *Knowledge of the Employer.*

The record shows that here, although the preexisting mental condition apparently did not affect petitioner's ability to work since 1947 when he last went to work for Smith, it certainly affected such ability for at least five months in 1944, during which time he was confined at Agnew. The record fails to show how much of the period from the time he left Agnew on September 25, 1944, until sometime in 1947 when he was employed by Smith, if any, he was employed, and if unemployed, whether his mental condition contributed to that fact. Petitioner testified that he worked approximately 12 years for Smith. From 1947 to 1953 (the time of his injury) is at most six years. Does the balance of the 12 year work period include the time of his commitment? If so, his employer Smith must have known of his condition. Dr. Kowalski's report, dated March 16, 1954, states that petitioner worked for several years at the shipyards during the war. No dates given. It is possible petitioner was not in Smith's employment when committed. Dr. Shev states in his undated report (defendant Subsequent Injuries Fund's Exhibit 7): "His condition although permanent was part of his personality and the employer accepted him as he was at that time. He presented himself in this particular light at all times." Petitioner testified that his employer Smith was a good friend, and had known him since he was 15 years old. The record clearly shows that in 1944 petitioner's disability was for a period of time a work disability as well as a mental disability. The testimony of all the doctors is to the effect that his mental condition was a chronic one which continued on. Therefore it was permanent. ▆▆ Even though in the last 11 or 12 years the work disability did not continue, nevertheless, his condition brought him within the provisions of section 4751 as to any employer who knew of that condition. The commission should have determined whether or not Smith had such

knowledge. While the record on the subject is confusing, the commission could have required the confusion to be cleared up or could have found against petitioner for failure of proof. However, the commission gave no consideration to this matter, assuming that petitioner could not come within the provisions of section 4751. In determining this issue the commission may require further evidence. If the commission finds that the employer had knowledge of petitioner's preexisting disability, then it will have to determine the other matters required by the section, the degree of disability caused by the combination, etc.

The order is annulled and the proceeding is remanded to respondent commission for further proceedings not inconsistent with the views herein expressed.

Peters, P. J., and Wood (Fred B.), J., concurred.

The petition of respondent Industrial Accident Commission for a hearing by the Supreme Court was denied October 31, 1956. Schauer, J., and Spence, J., were of the opinion that the petition should be granted.