[Civ. No. 17361. First Dist., Div. Two. Jan. 25, 1957.]

STATE OF CALIFORNIA, SUBSEQUENT INJURIES FUND, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and MARGUERITE BACHRACH et al., Respondents.

*Assigned by Chairman of Judicial Council.

Edmund G. Brown, Attorney General, Gerald F. Carreras and Robert L. Bergman, Deputy Attorneys General, for Petitioner.

Everett A. Corten, Daniel C. Murphy, Smith & Parrish and Joseph E. Smith for Respondents.

KAUFMAN, J.—Petitioner seeks review and the annulment of an award and decision after reconsideration made by the respondent Industrial Accident Commission. The award gave respondent Marguerite Bachrach permanent disability benefits from the Subsequent Injuries Fund. The award was based on

a finding that at the time of the industrial injury respondent Bachrach suffered from a previous physical disability or physical impairment resulting from arthritic processes.

On June 8, 1955, Marguerite Bachrach, aged 64, filed an application in which she alleged injury arising out of the course of her employment. It was claimed that while employed as a deputy clerk on July 29, 1953, by the respondent county of Alameda, Bachrach sustained an industrial injury when she fell, injuring her right hip, back and knee. In the application for adjustment of claim, applicant Bachrach answered "No" to the question: "Have you ever before filed a claim with this Commission?"

. Applicant received temporary disability benefits and medical treatment.

A claim was filed to establish the amount of permanent disability benefits to which she was entitled from Alameda County. On July 21, 1955, an order issued from the respondent Commission whereby the petitioner State of California (Subsequent Injuries Fund) was joined as a party defendant, as it then appeared that Alameda County would not be responsible for all her disability.

Among the medical evidence considered by the Industrial Accident Commission were the reports of Doctor Toffelmeir which stated, "It should be noted that she has had a considerable amount of difficulty with both of her knees over a long period of time, and she has had arthritic changes in other parts of her body, but up to the present time, her past condition has not interfered with the treatment of her hip. . . . As you will further note, this patient has arthritis in every joint in her body, especially in her knees and she has had difficulty for a considerable time." Doctor Walker reported that the applicant was suffering from preexisting arthritic condition. The report of Permanent Disability Rating Bureau stated that the applicant has had some difficulty with arthritic changes in left knee and ankle and in right ankle. The applicant was also examined by the commission's medical examiner and his report states as follows: "If required to give an arbitrary assessment, I would estimate 75% disability to be assessed to pre-existing pathology and 25% to injury."

A hearing was held on September 13, 1955, at which the applicant testified. Her testimony at this hearing, so far as it relates to her preexisting condition, was that prior to her injury of July 29, 1953, her job required much bending over and assuming a squatting position when doing work on the files in the county clerk's office. Before said injury she had

no pain or limitation of motion in the right hip. She had no pain in the right knee, but had some enlargement of both ankles and knees. This enlargement, however, did not limit the motion of the ankles or knees. Before said injury she had no difficulty in performing the requirements of her job. She had no trouble bending or squatting; however, she was not as nimble as her coworkers. She had never lost any time from her job before the said injury due to any physical complaints, and had had no difficulty whatsoever in performing her work.

The matter was submitted after the hearing of September 13, 1955. On January 16, 1956, the respondent Commission's Permanent Disability Rating Bureau issued a recommended rating of 85 per cent combined disability. The recommended apportionment was $19\frac{1}{4}$ disability to the industrial injury and the balance to the alleged preexisting disability.

On March 13, 1956, and on April 24, 1956, the Subsequent Injuries Fund cross-examined Mr. Dougherty, the Commission's Permanent Disability Rating Specialist. Mr. Dougherty was questioned as to the Instructions to Rating Bureau prepared by the Referee. He testified that if the applicant had no trouble in bending or squatting prior to the injury in question, such would be entirely inconsistent with the disability described under the combined factors of disability. He further testified that the description "enlargement of ankles and knees" for a deputy county clerk would not be a ratable factor of disability in the absence of limitation of motion. He also stated that in executing a rating such as this, it is important to know what the applicant could or could not do because of the alleged physical disability. The instructions to the rating bureau did not contain these relevant factors for the rating specialist's consideration.

The Industrial Accident Commission found that at the time of her injury she suffered from a previous physical disability or physical impairment resulting from arthritis. Petitioner sought reconsideration which was denied.

The petitioner contends: (1) that the applicant suffered from no preexisting disability within the meaning of Labor Code, section 4751; (2) that the State of California (Subsequent Injuries Fund) cannot be assessed for a disability which did not antedate the industrial injury.

## I.

Question: Whether the applicant's pre-existing nondisabling arthritic processes constitute a "pre-existing partial dis-

ability or impairment'' within the meaning of California Labor Code, section 4751?

Labor Code, section 4751, provided: ''If an employee who is permanently partially disabled receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree of disability caused by the combination of both disabilities is greater than that which would have resulted from the subsequent injury alone, and the combined effect of the last injury and the previous disability or impairment is a permanent disability equal to 70 per cent or more of total, he shall be paid in addition to the compensation due under this code for the permanent partial disability caused by the last injury, compensation for the remainder of the combined permanent disability existing after the last injury as provided in this article.''

The history of section 4751 is a brief one. It was originally passed in 1945, just as World War II was coming to a close. ■ It is reasonable to infer that the act indicates the legislative policy to be that every person is entitled to the right of self support even after he has been physically handicapped by injury or disease; and that the purpose of the act is to encourage the employment of physically handicapped persons, veterans in particular, and to make a logical and equitable adjustment of the liability under Workmen's Compensation Law. At that time, after the words at the beginning of the section ''If an employee who is permanently partially disabled'' appeared the following: ''by reason of the loss, or loss of use of, a hand, an arm, a foot, a leg or an eye.'' Thus the only employee who then was entitled to payment from the Subsequent Injuries Fund was one who at the time of an industrial injury had lost the use of, or lost, a specified member of his body. An employer could see that a prospective employee had such a condition, and would know that if such person suffered an injury while in his employ, the employer would not be required to compensate for the disability already existing. The section did not apply to an employee having a disability or an impairment in other respects than those specified. An employee with a partial disability other than one caused by a specified member of his body, if subsequently injured, could make no claim on this fund. In 1949, evidently for the purpose of including other disabilities than those specified, the quoted phrase was eliminated from the section.

■ We can find neither in the original act, nor in its

present form, any indication that the Legislature intended that either the term "disability" or "impairment" used therein was not to be limited "to *actual manifest and symptomatic disabilities which antedated an industrial injury.*" (*State* v. *Industrial Acc. Com.*, 135 Cal.App.2d 544, 551 [288 P.2d 31].)

Hanna in "The Law of Employee Injuries and Workmen's Compensation," volume 2, page 269, states: "It is insufficient to show pre-existing pathology which, at the time of industrial injury, had not become disabling. The recovery permitted under the law cannot be predicated upon proof of pre-existing pathologies, nor upon the existence of present disability based on pre-existing pathologies. The employee must show that prior to his industrial injury he suffered 'permanent disability or physical impairment.' "

█ Any liability of the Subsequent Injuries Fund in the instant case must be derived admittedly from section 4751. More particularly, the controlling words, for purposes of the benefits sought herein, are, "If an employee who is permanently partially disabled . . ." That is, the section is not operative and the Subsequent Injuries Fund can incur no liability unless a claim is made by an employee who is *disabled* at the time of subsequent compensable injury. Such permanent partial disability is a condition precedent to an applicant's recovery of benefits from the Subsequent Injuries Fund under this section. Further, such disability must be in existence prior to the industrial injury for which compensation is sought from the employer. (*State* v. *Industrial Acc. Com., supra,* Lab. Code, § 4751.)

█ The term "disabled," as used in Labor Code, section 4751, means "a combination of partial or total physical incapacity and of inability to work." (*State* v. *Industrial Acc. Com., supra,* at 550.) █ "Impairment," as used in the same section, "is not an unknown condition but one that causes loss of function of the body in whole or in part." (*Id.*) The uncontroverted evidence showed that Marguerite Bachrach was suffering from no pre-existing permanent partial disability or impairment at the time of her industrial injury. Prior to her injury her knees and ankles were slightly enlarged; but there was no pain, limitation of motion or weakness evident, nor was she aware of any. She had never had any difficulty performing the duties of her job. True, she stated she was not as nimble as her coworkers. But who can expect a woman 64 years of age to be nimble?

■ Slight enlargement of the knees and ankles, without pain, without limitation of motion or weakness, without affecting her performance on the job, cannot under the definitions in the *State* v. *Industrial Acc. Com.*, case, *supra*, constitute a permanent partial disability or impairment. Such slight swelling or enlargement is not of itself a ratable factor of disability. This was admitted by the respondent Commission's Permanent Disability Rating Specialist. Furthermore, there is no medical evidence showing that the slight enlargement of the ankles and knees was caused by any "disease process," such as her latent arthritic condition.

## II.

Did the employer know (or should have known) as a reasonable person of the preexisting arthritic processes? ■ The kind of physical impairment the Legislature had in mind was one of which the employer had knowledge since the statute was designed to encourage the employment of partially disabled people and an obscure disability unknown to the employer would present no handicap to employment. "An employer could see that a prospective employee had such a condition, and would know that if such person suffered an injury while in his employ, the employer would not be required to compensate for the disability already existing." (*State* v. *Industrial Acc. Com.*, *supra*, at 550.)

In the instant case there is not a scintilla of evidence for establishing that applicant's employer had any knowledge of applicant's preexisting arthritic condition. Furthermore there is no evidence that the applicant herself knew that she had a preexisting arthritic condition. In *Urquiza* v. *Industrial Acc. Com.*, 144 Cal.App.2d 322 [300 P.2d 871], this court reemphasized the requirement laid down in *State* v. *Industrial Acc. Com.*, *supra*, 551, 552 and 553, that in such a case the applicant must show as a condition precedent that the employer had knowledge of the preexisting disabling condition before she can come within the provisions of Labor Code, section 4751.

■ Labor Code, section 4751, was not intended to apply to asymptomatic disease processes or arthritic processes which were unknown to both employee and employer and which in nowise interfered with the employee's ability to work. (*State* v. *Industrial Acc. Com.*, *supra*, 553.)

We conclude that under the evidence there was no permanent partial disability antedating the hip injury and hence

under the statute no liability on the part of petitioner Subsequent Injuries Fund.

Award providing for payment of compensation by Subsequent Injuries Fund is hereby annulled.

Dooling, Acting P. J., and Draper, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.