[L. A. No. 24914. In Bank. June 6, 1958.]

LESTER FERGUSON, Petitioner, v. INDUSTRIAL ACCI-
DENT COMMISSION et al., Respondents.

William M. Sarnoff and Donald Franz for Petitioner.

Everett A. Corten, Edward A. Sarkisian, Edmund G. Brown, Attorney General, Miles J. Rubin and Gerald F. Carreras, Deputy Attorneys General, for Respondents.

SCHAUER, J.—Petitioner seeks annulment of a decision and award of respondent Industrial Accident Commission denying his application for compensation payments from respondent Subsequent Injuries Fund (hereinafter sometimes termed the fund). We have concluded that "labor disablement" rather than "employer knowledge" is the essential factor by which to gauge the previously sustained disablement in determining whether that disability qualifies petitioner for resort to the fund, and that the matter should be remanded to the commission for redetermination in the light of the views hereinafter set forth.

On February 2, 1956, petitioner, then 43 years of age, sustained a fractured right hip arising out of and occurring in the course of his employment as a meat cutter. His claim against his employer and the latter's insurance carrier, based on the industrial injury, has been settled by an approved compromise and release, and the present case concerns only petitioner's asserted right to payments from respondent fund under the provisions of section 4751 of the Labor Code[1] as amended effective September 7, 1955.

During convalescence from the hip fracture (i.e., from the

---

[1]Section 4751: "If an employee who is permanently partially disabled receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree of disability caused by the combination of both disabilities is greater than that which would have resulted from the subsequent injury alone, and the combined effect of the last injury and the previous disability or impairment is a permanent disability equal to 70 percent or more of total, he shall be paid in addition to the compensation due under this code for the permanent partial disability caused by the last injury, compensation for the remainder of the combined permanent disability existing after the last injury as provided in this article; provided, that either (a) the previous disability or impairment affected a hand, an arm, a foot, a leg, or an eye, and the permanent disability resulting from the subsequent injury affects the opposite and corresponding member, or (b) the permanent disability resulting from the subsequent injury, when considered alone and without regard to the age of the employee, is equal to 40 percent or more of total."

industrial injury), it was discovered that petitioner was suffering from progressive muscular dystrophy. His application for compensation payments from the fund followed. For the purpose of determining the application the trial referee found that petitioner's industrial injury resulted in a permanent disability rated at 14½ per cent; that petitioner "had a previous permanent partial disability consisting of primary progressive muscular dystrophy affecting . . . lower extremities"; and that the combination of the disabilities resulted in a permanent disability of 100 per cent, entitling petitioner to certain subsequent injuries payments from respondent fund.

On petition of the fund respondent commission granted reconsideration and, on the sole and specific ground that petitioner had failed to prove that his employer knew of the preexisting disability, concluded that petitioner was not entitled to payments from the fund.[2] In so doing the commission relied on four opinions by the District Court of Appeal which state or hold that proof of knowledge by the employer of the previous disability is a prerequisite to payments under section 4751. (*State* v. *Industrial Acc. Com.* (*Baldes*) (1957), 150 Cal.App.2d 716 [311 P.2d 26]; *State* v. *Industrial Acc. Com.* (*Bachrach*) (1957), 147 Cal.App.2d 818 [306 P.2d 64]; *Urquiza* v. *Industrial Acc. Com.* (1956), 144 Cal.App.2d 322 [300 P.2d 871]; *State* v. *Industrial Acc. Com.* (*Strauss*) (1955), 135 Cal.App.2d 544 [288 P.2d 31].)

In the earliest of these four cases (Strauss) the applicant had suffered a heart attack while lifting some objects in the course of his employment. His resultant 90 per cent disability was determined to be partially due to the lifting and partially due to preexisting heart disease. Uncontradicted evidence indicated that prior to the lifting incident the heart condition was unknown, did not interfere with the applicant's work ability and could not have been diagnosed had the applicant submitted to a heart examination. The commission nevertheless found that at the time of his injury the applicant "suffered from a previous physical disability" within the meaning of section 4751. The court annulled that part of the award which provided for subsequent injuries payments and, in the course of its opinion, referred to *Zyla* v. *A. D. Juilliard & Co.* (1951), 277 App.Div. 604 [102 N.Y.S.2d 255] (holding that "employer knowledge" is essential to payments from

---

[2]Other contentions advanced by the fund were discussed by the commission, but no decision was made as to their merit.

the New York counterpart of our Subsequent Injuries Fund), and concluded "that section 4751 . . . was not intended to apply to *asymptomatic disease processes* which were unknown to both employee and employer and *which in nowise interfered with the employee's ability to work.*" (P. 553 of 135 Cal.App. 2d; italics added.)

The above stated conclusion is fully consistent with the fundamental requirement of the statute *as to status for eligibility to resort to the fund*; i.e., that the employe be one who already "is permanently partially disabled." (Lab. Code, § 4751.) But the language of the Strauss case goes farther. It articulates the inception in California of the "employer knowledge" requirement, and it is against that concept that Ferguson directs his attack. He argues that the court erred in relying upon New York decisions to support the proposition that "employer knowledge" is requisite to payments under section 4751, and points to the fact that the New York statute is significantly different from ours. There the employer is made liable not only for the disability resulting from the industrial injury but also for the disability flowing from the employe's preexisting condition. Such is not the case in California. (See Lab. Code, § 4750.[3]) It is the New York *employer*, rather than the *employe*, who must seek the benefits of the New York counterpart of our Subsequent Injuries Fund, and the New York courts have held that the employer must prove that he had knowledge of the employe's preexisting impairment before he qualifies for reimbursement. New York reasons that the purpose of the statute is to encourage employment of handicapped persons and that the legislative intent is not furthered by reimbursing an employer who did not know of the employe's preexisting handicap. (See *Zyla* v. *A. D. Juilliard & Co.* (1951), *supra,* 277 App. Div. 604 [102 N.Y.S.2d 255].)

Be that as it may, and despite the difference between the New York and California statutes, section 4751 is a constituent part of the subsequent injuries legislation of this state (Lab. Code, §§ 4750-4755) which this court, so treating

---

[3]Section 4750: "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment.

"The employer shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed."

it, has sustained against constitutional attack, on the ground, *inter alia*, that such legislation is designed, and is appropriate, to encourage employment of handicapped persons and that such purpose is encompassed in the constitutional authorization. (*Subsequent Injuries Fund* v. *Industrial Acc. Com.* (1952), 39 Cal.2d 83, 86 [244 P.2d 889].)

Nevertheless, neither section 4751 nor any other provision of the subsequent injuries legislation nor any decision of this court requires that *the employer have knowledge* of the employe's preexisting condition as a basis for a Subsequent Injuries Fund claim by an employe who already "is permanently partially disabled [and who] receives a subsequent compensable injury." The purpose of the legislation— to encourage employment of persons who are "permanently partially disabled"—is subserved if the further protection provided by the fund encourages either employers to offer, or the described handicapped persons to seek or accept, such employment. A person who already "is permanently partially disabled" to the substantial extent contemplated by the statute—as by the loss of "a hand, an arm, a foot, a leg, or an eye" to meet the requirement of subdivision (a), or that will combine with the subsequent injury of 40 per cent or more to make a minimum combined effect of 70 per cent of total permanent disability as required by subdivision (b) —may well need the encouragement afforded by the fund as an inducement to seek further gainful employment. By such employment he may risk the aggravated effect of loss of "the opposite and corresponding member" as defined in subdivision (a) or the grave percentage of totality described in subdivision (b). Whether full employer knowledge of preexisting employe disabilities is or is not desirable, or should or should not be encouraged by the statute, is beside the point here.

Certainly employers are entitled to know all relevant and material facts concerning the physical condition of prospective employes just as such employes are entitled to be informed as to hours of labor, working conditions, etc. But all such matters should be the subject of discussion before the contract of employment is made. If prospective employers wish to be informed of preexisting disabilities before entering into an employment contract, they are in a position to acquire the pertinent data by means, for example, of requiring the filling out of an application blank including a statement of physical condition, or by requiring a physical examination by a doctor as does the State of California before accepting

applicants into permanent employment in civil service positions. (See Gov. Code, §§ 18931, 18935.)

■ The fund, in support of its argument favoring an employer-knowledge rule, refers to the fact that as pointed out in the Strauss case (135 Cal.App.2d 544, 553), in the "Subsequent Injuries Fund Report of the Sub-committee of Assembly Interim Committee on Finance and Insurance" (vol. 15, No. 7, 1953-1955, Assembly Interim Committee Reports), attention is called to the wide variety of pathologies (most of them asymptomatic, i.e., unmanifested) which have been urged as a basis for commission awards against the Subsequent Injuries Fund: "heart disease; arthritic processes; nervous tremors; Parkinson's disease; tuberculosis; syphilis; varicosities; diabetes; hysteria, and other forms of mental derangement; harelip; speech impediments; weak abdominal walls; decreased mental capacity; epilepsy; nervousness; hemorrhoids; false teeth; general debility and undernourishment; flat feet; tonsilitis; calluses and bunions on feet; knock-knees; and schizophrenia of the paranoid type." The report further states that to apply the provision for preexisting permanent partial disability to more than easily recognizable permanent objective disabilities would convert the Subsequent Injuries Law into a state health insurance plan, applicable only to one class, the employed. In addition, it would provide life annuity benefits when the combined effect of a previous disease and subsequent injury results in a permanent disability of 70 per cent or more of total disability. Such a legislative intent should not be inferred. It should clearly appear. This point of view was reiterated by the court in the Bachrach case (*State* v. *Industrial Acc. Com.* (1957), *supra*, 147 Cal. App.2d 818, 822-823) and is one with which we are in accord.

■ It may, however, be noted that the four District Court of Appeal cases hereinabove cited (Strauss, Urquiza, Bachrach, Baldes) were decided under the section (Lab. Code, § 4751) as it read prior to the 1955 amendment and at a time when the two provisos added by that amendment were not included. Those provisos now expressly require "that either (a) the previous disability or impairment affected a hand, an arm, a foot, a leg, or an eye, and the permanent disability resulting from the subsequent injury affects the opposite and corresponding member, or (b) the permanent disability resulting from the subsequent injury, when considered alone and without regard to the age of the employee, is equal to 40 percent or more of total." It thus appears that the 1955

amendment shows further legislative recognition of, and an intention to altogether obviate or at least to strictly limit, the opportunities of converting the Subsequent Injuries Fund into a state health plan.[4]

■ Further, we are of the view that as indicated by the Subcommittee report mentioned in the Strauss case, as suggested by the commission in the Urquiza case (*Urquiza* v. *Industrial Acc. Com.* (1956), *supra*, 144 Cal.App.2d 322), and as is implicit in the legislative language, the statute contemplates that the previous condition must be actually "labor disabling," and that such disablement, rather than "employer knowledge," is the pertinent factor to be considered in determining whether the employe is entitled to subsequent injuries payments under the terms of section 4751. As commented in Larson's Workmen's Compensation Law (1952), section 59.33 (vol. 2, p. 63), "the prior injury under most statutes should be one which, if industrial, would be independently capable of supporting an award. It need not, of course, be reflected in actual disability in the form of loss of earnings [as this court has already held in *Smith* v. *Industrial Acc. Com.* (1955), 44 Cal.2d 364, 367 [2, 3] [288 P.2d 64]], but if it is not, it should at least be of a kind which could ground an award of permanent partial disability. This must be so, because when the second-injury question later arises, the prior injury must be one capable of accounting separately for a portion of the ensuing disability, as distinguished from condition rendered disabling only as the result of 'lighting up' by the second injury." This construction is also supported by the language of Labor Code, section 4663, hereinafter quoted.

■ The rule is, of course, that where a disability is due entirely to an industrial injury and the lighting up or aggravation of a preexisting condition by such industrial injury, the employer is required to compensate for the entire disability *so caused* (within the limits defined in Lab. Code, § 4663) and there is no apportionment of disability as between the industrial accident on the one hand and that due to the *industrially caused aggravation* of the employe's preexisting physical condition. ■ But if the entire disability is partly due to industrial disability growing out of the immediate injury (including such industrially caused aggravation or

<hr>

[4] In the present case petitioner's claim is that his industrial injury to his right hip, together with the previous muscular dystrophy affecting "lower extremities," as found by the trial referee, brings him within proviso (a) of the 1955 amendment.

lighting up of a preexisting dormant condition) and, in part, to a nonindustrial disability resulting from normal symptoms, effects or progress of a preexisting disease or condition, then there is an apportionment of the percentage of the disability due to the *industrial cause* (the injury) and the percentage due to the disease itself and its symptoms, effects and progress apart from the injury. ▮▮▮ In the language of section 4663 of the Labor Code, "In case of aggravation of any disease *existing prior to a compensable injury* [italics added], compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury." (See *Subsequent Injuries Fund* v. *Industrial Acc. Com.* (1955), 44 Cal.2d 604, 607-610 [283 P.2d 1039] ; see also *Colonial Ins. Co.* v. *Industrial Acc. Com.* (1946), 29 Cal.2d 79, 83-84 [2, 3] [172 P.2d 884] ; *Tanenbaum* v. *Industrial Acc. Com.* (1935), 4 Cal.2d 615, 617-618 [52 P.2d 215] ; *Globe Indem. Co.* v. *Industrial Acc. Com.* (1954), 125 Cal.App.2d 763, 768-769 [2] [271 P.2d 149] ; *Bowler* v. *Industrial Acc. Com.* (1955), 135 Cal. App.2d 534, 539 [4, 5, 6] [287 P.2d 562].)

▮▮▮ As already noted above, and more fully discussed in *Subsequent Injuries Fund* v. *Industrial Acc. Com.* (1955), *supra*, 44 Cal.2d 604, 607-608, there is also an apportionment under the terms of section 4750[3] of the Labor Code where an employe already suffering from a previously incurred permanent disability or physical impairment sustains a permanent industrial injury. The employer, in such case, "shall not be liable for compensation to such an employee for the combined disability, but only for that portion due to the later injury as though no prior disability or impairment had existed." (See also *Smith* v. *Industrial Acc. Com.* (1955), *supra*, 44 Cal.2d 364.) It is, of course, with the apportionment prescribed by section 4750 and the contribution award contemplated by section 4751 that the parties to this litigation are directly concerned.

From the several applicable statutory provisions which have been referred to, it appears that both employe and employer, in relationships subject to the Workmen's Compensation Act, will be well advised to be diligent in ascertaining, at the very inception of the employment relation, all available or discoverable facts relevant to the prospective employe's physical condition. This should subserve the interests of both employe and employer. In many cases it may result in alerting the employe to possibly incipient processes of disease at a

time when they can be interrupted or corrected; it may disclose conditions which will indicate that, for the personal safety or financial welfare of all concerned, certain types of activity should be avoided by some employes or that they possess peculiar aptitude for other endeavors. Certainly periodic medical examinations of all those engaged in industry would not be inimical to the interests of employer, employe, insurance carrier, or the State of California acting as the Subsequent Injuries Fund. The statutes we have discussed and the conclusions we have reached are consistent with both the interests of the parties and the objectives of the legislation.

 To summarize, we hold that to qualify for resort to the Subsequent Injuries Fund an employe must show that prior to the occurrence of the subsequent industrial injury he had attained the factual status of the "permanently partially disabled" and that such previously incepted disability was labor disabling, but that previous knowledge thereof by the employer is not inherently as a matter of law required as a condition to an award to the employe of payments from the Subsequent Injuries Fund. All implications to the contrary which may be found in *State* v. *Industrial Acc. Com.* (*Baldes*) (1957), *supra*, 150 Cal.App.2d 716; *State* v. *Industrial Acc. Com.* (*Bachrach*) (1957), *supra*, 147 Cal.App. 2d 818; *Urquiza* v. *Industrial Acc. Com.* (1956), *supra*, 144 Cal.App.2d 322; *State* v. *Industrial Acc. Com.* (*Strauss*) (1955), *supra*, 135 Cal.App.2d 544, are disapproved.

Inasmuch as respondent commission placed its decision (award denying recourse to the Subsequent Injuries Fund) solely on the ground that petitioner had failed to establish previous employer knowledge of his alleged earlier incurred permanent partial disability, and as the decision cannot on that limited ground be sustained, it follows that the award should be and it is annulled and the matter is remanded for determination by the commission, on the merits, in a manner and on grounds not inconsistent with the views hereinabove expressed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

McComb, J., dissented.

The petition of respondent Subsequent Injuries Fund for a rehearing was denied July 2, 1958. McComb, J., was of the opinion that the petition should be granted.