[L. A. No. 26518. In Bank. Nov. 16, 1961.]

SUBSEQUENT INJURIES FUND, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, CHARLES O. ALLEN et al., Respondents.

Stanley Mosk, Attorney General, Edward M. Belasco, Norman L. Epstein and Henry G. Ullerich, Deputy Attorneys General, for Petitioner.

Everett A. Corten and Edward A. Sarkisian for Respondents.

SCHAUER, J.—Petitioner Subsequent Injuries Fund (hereinafter sometimes termed the fund) seeks annulment of a decision and award of respondent Industrial Accident Commission in favor of respondent employe Charles O. Allen and against petitioner. We have concluded that the commission was correct in its determination that the employe's unknown but permanent hearing loss which existed previous to his sub-

sequent industrial injury is a rateable factor of permanent disability for purposes of subsequent injuries compensation, and that the award should be affirmed.

In August 1956, while employed as a structural iron worker, Allen suffered an industrial injury when he fell some 20 to 30 feet and landed on his hands and head. Thereafter he complained of partial deafness as well as other injuries related to the fall. Prior to this injury, and even after an earlier 1955 industrial accident, he had been aware of no deafness.

Allen's claims for normal compensation benefits following the 1956 injury were settled by approved compromise and release. Thereafter he filed application for the additional benefits from the fund which are here in dispute.

An independent medical specialist in the field of otology, appointed by the commission to examine Allen, reported that Allen then had a 37 per cent loss of hearing in his left ear, a 95 per cent loss of hearing in his right ear, and a 44 per cent binaural loss of hearing; that just prior to the 1956 (the second) injury Allen had a 25 per cent loss of hearing in each ear, largely the result of many years of exposure to a high noise level; that Allen stated he had not noted difficulty in hearing prior to the 1956 accident. The doctor concluded that 12 per cent of the entire deafness in the left ear, 70 per cent of that in the right ear, and the combined 44 per cent binaural loss, were attributable to the 1956 injury.

Following rating proceedings before the commission Allen was given a rating of 85½ per cent of total permanent disability of which 79 per cent was attributed to the 1956 industrial injury and 6½ per cent to the preexisting loss of hearing and to other preexisting factors not here involved. He was awarded additional benefits from the fund based upon the 6½ per cent of total disability,[1] and this petition by the fund followed.

Other than the opinion of the independent medical specialist and that to the same general effect of an otologist who examined Allen for the insurance carrier of Allen's employer, there was no evidence that Allen suffered from any loss of hearing prior

---

[1] At the time of the subsequent injury in 1956, section 4751 of the Labor Code provided that "If an employee who is permanently partially disabled receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree of disability caused by the combination of both disabilities is greater than that which would have resulted from the subsequent injury alone, and the combined effect of the last injury and the previous disability or impairment is a per-

to the 1956 accident or that any such loss impaired his earnings or his ability to work or to obtain employment in his chosen field of structural iron or steel worker.

As ground for annulling the award the fund contends that Allen's preexisting hearing loss does not constitute a "previous disability or impairment" within the meaning of section 4751 of the Labor Code (*ante*, fn. 1), in that it was not "labor disabling" as required by our holding in *Ferguson* v. *Industrial Acc. Com.* (1958) 50 Cal.2d 469, 477 [8], 479 [13] [326 P.2d 145].

This contention is without merit. In *Ferguson* we stated (p. 477 [8]) that "the statute contemplates that the previous condition must be actually 'labor disabling,' and that such disablement, . . . is the pertinent factor to be considered in determining whether the employe is entitled to subsequent injuries payments . . ."; that the prior disablement need not be reflected in the form of net loss of earnings received (as we had already held in *Smith* v. *Industrial Acc. Com.* (1955) 44 Cal.2d 364, 367 [2, 3] [282 P.2d 64]; e.g., he could develop other, and even more highly paid, skills), but "if it is not [reflected in loss of actual earnings], it should at least be of a kind which could ground an award of permanent partial disability"; and that (p. 479 [13]) "to qualify for resort to the Subsequent Injuries Fund an employe must show that prior to the occurrence of the subsequent industrial injury he had attained the factual status of the 'permanently partially disabled' and that such previously incepted disability was labor disabling, but that previous knowledge thereof by the employer is not inherently as a matter of law required as a condition to an award to the employe of payments from the Subsequent Injuries Fund." It is clear that under these tests Allen's preexisting permanent partial loss of hearing was sufficient, in the circumstances, to support the finding that he was permanently partially disabled, that such disability was labor disabling even though it had not resulted in loss of earnings and had not interfered with

manent disability equal to 70 percent or more of total, he shall be paid in addition to the compensation due under this code for the permanent partial disability caused by the last injury, compensation for the remainder of the combined permanent disability existing after the last injury as provided in this article; provided, that . . . (b) the permanent disability resulting from the subsequent injury, when considered alone and without regard to the age of the employee, is equal to 40 percent or more of total."

his employment *in the particular field* in which he was then working, and that it was of a kind which could ground an award of permanent partial disability. As pointed out by the commission, a condition of substantial deafness can reasonably be expected to handicap an employe's ability in the general labor market to get and hold a new job, if once he should be displaced from the job he has had.

The fund urges, nevertheless, that such a view conflicts with further statements found in *Ferguson* (p. 476 [6] of 50 Cal. 2d) to the effect that in light of the ''Subsequent Injuries Fund Report of the Sub-committee of Assembly Interim Committee on Finance and Insurance'' (Vol. 15, No. 7, 1953-1955, Assembly Interim Committee Reports), the statutory provisions for preexisting permanent partial disability should not be applied ''to more than easily recognizable permanent objective disabilities'' without a clear indication of legislative intent that this be done. We believe that no such conflict appears. Even though unknown to Allen himself, and therefore plainly not a subjective complaint, the preexisting disability appeared readily recognizable to the otologists whose business it is to test and evaluate hearing; i.e., to diagnose deafness when it exists. No reason appears why such disability, which actually existed and which gave to Allen the factual status of the permanently partially disabled as that term has heretofore been defined in *Ferguson* and in *Smith* (*Ferguson* v. *Industrial Acc. Com.* (1958), *supra*, 50 Cal.2d 469, 477-479 [8-13] ; *Smith* v. *Industrial Acc. Com.* (1955), *supra*, 44 Cal.2d 364, 367-370 [2-4] ; see also *Subsequent Injuries Fund* v. *Industrial Acc. Com.* (Baldes) (1960) 53 Cal.2d 392, 401-402 [2] [348 P.2d 193] ; *Tarr* v. *Industrial Acc. Com.* (1958) 164 Cal.App.2d 834 [331 P.2d 417] ), must have been known to the employe in order for that disability to ground an award from the Subsequent Injuries Fund. Any implications to the contrary which may be found in *State* v. *Industrial Acc. Com.* (Baldes) (1957) 150 Cal.App.2d 716 [311 P.2d 26] ; *State* v. *Industrial Acc. Com.* (Bachrach) (1957) 147 Cal.App.2d 818 [306 P.2d 64] ; *Urquiza* v. *Industrial Acc. Com.* (1956) 144 Cal.App.2d 322 [300 P.2d 871] ; *State* v. *Industrial Acc. Com.* (Strauss) (1955) 135 Cal.App.2d 544 [288 P.2d 31], are disapproved.

The award is affirmed.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.