[Civ. No. 20975. First Dist., Div. One. June 19, 1963.]

SUBSEQUENT INJURIES FUND, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and BRUCE S. HANSON, Respondents.

*Assigned by Chairman of Judicial Council.

Stanley Mosk, Attorney General, B. Franklin Walker and J. L. Henderson, Jr., Deputy Attorneys General, for Petitioner.

Everett A. Corten and Robert A. Borgen for Respondents.

BRAY, P. J.—Petitioner, Subsequent Injuries Fund, seeks annulment of the commission's opinion and decision, after reconsideration, insofar as it denies to petitioner credit for social security disability payments being made to the applicant.

### QUESTION PRESENTED.

Does section 4753, Labor Code, entitle Subsequent Injuries Fund to credit for social security disability benefits received by an injured workman?

### RECORD.

May 28, 1959, the applicant, Bruce S. Hanson, was injured in an automobile accident. The major effect of this industrial injury was to accelerate an existing diabetic retinitis to produce blindness of the right eye. Prior to the injury and as a result of the same disease process, applicant had already suffered practically complete loss of vision in the left eye. On December 22, 1961, applicant filed an application for benefits from petitioner, alleging that the said industrial injury resulted in disabilities to the eyes, chest, and back of the applicant and that prior to said injury the applicant was suffering from disabilities to his eyes and from diabetes. At the hearing evidence was presented, showing that applicant was receiving federal social security disability benefits of $118 per month and state aid to potentially self-supporting blind of $162 per month. Payments from both of these sources began after the industrial injury. The referee found that applicant was 100 per cent permanently disabled; that 31.75 per cent of this disability was industrially caused, and that 68.25 per cent was due to preexisting disability or impairment. Accordingly, a 31.75 per cent permanent disability indemnity award was issued against the employer's carrier and a 68.25 per cent award was issued against the petitioner herein. The referee further found that the petitioner was entitled to credit under the provisions of Labor Code section 4753 to the extent of 68.25 per cent of the social security payments received by said applicant under the provisions of the Federal Old Age Survivors and Disability Insurance Benefits Act. (42 U.S.C.A. ch. 7, subch. II.)

Thereafter, the applicant filed a petition for reconsideration with the commission, contending that petitioner was not entitled to credit for the social security disability benefits.

After reconsideration the commission issued its opinion and decision vacating that portion of the referee's decision allowing credit to petitioner and held that no credit be allowed to petitioner for the social security disability benefits received by the applicant.

Thereupon petitioner applied to this court for a writ of review.

SECTION 4753, LABOR CODE.

The sole issue presented by this petition is whether section 4753 of the Labor Code entitled the petitioner to credit, in some amount, for social security disability benefits received by the applicant, where his preexisting disability and his subsequent industrially caused disability combined to entitle the applicant to the social security disability benefits.

This question has not before been decided by the appellate courts of this state.[1] Therefore, we are presented with a problem of statutory interpretation. Section 4753 of the Labor Code reads as follows: "Such additional compensation is not in addition to but shall be reduced to the extent of any monetary payments *received* by the employee, *from any source whatsoever, for or on account of said pre-existing disability or impairment,* except as to payments being made to the employee or to which he is entitled as a pension or other compensation for disability incurred in service in the armed forces of the United States, and except as to payments being made to him or to which he is entitled as assistance under the provisions of Chapter 1 of Part 2 of Division 2, or Chapter 1 of Division 3, or Chapter 2 of Division 4, or Division 5, of the Welfare and Institutions Code, and excluding from such monetary payments received by the employee for or on account of said preexisting disability or impairment a sum equal to all sums reasonably and necessarily expended by the employee for or on account of attorney's fees, costs and expenses incidental to the recovery of such monetary payments. All cases under this section and under section 4751 shall be governed by the terms of this section and section 4751 as in effect on the date of the particular subsequent injury." (Italics added.)

---

[1] However, there is a decision of the commission in an unreported case, *Norvel Clarence Paget* v. *Edward A. Wopschall, Inc.*; State Compensation Insurance Fund; Subsequent Injuries Fund, I.A.C. case No. 60 L.B. 12-439, in which it was held, contrary to the decision in this case, that the Subsequent Injuries Fund was entitled to credit for social security disability benefits.

To be fully understood, the above section must be read in connection with section 4751, dealing with the circumstances under which the Subsequent Injuries Fund becomes liable.

Section 4753 was added to the code in 1945, after the original subsequent injuries legislation was declared unconstitutional in 1930. (*Commercial Casualty Ins. Co.* v. *Industrial Acc. Com.* (1930) 211 Cal. 210 [295 P. 11].) As added in 1945, it read: "From such additional compensation, there shall be deducted any monetary payments for permanent disability or impairment which the employee *is entitled to receive* after the occurrence of the last injury, *from any Federal or State funds to which he has not directly contributed,* except that payments made to the employee or to which he is entitled as a pension or other compensation for disability incurred in service in the armed forces of the United States shall not be deducted therefrom." (Italics added.)

In 1949, the section was amended to read: "Such additional compensation is not in addition to but shall be reduced to the extent of any monetary payments the employee *is receiving from any federal or state fund to which he has not directly contributed,* except as to payments being made to the employee or to which he is entitled as a pension or other compensation for disability incurred in service in the armed forces of the United States." (Italics added.)

In 1951 the section was again amended, but only to add on to the end of the section the words "and except as to payments being made to him or to which he is entitled as assistance under the provisions of Chapter 1 of Part 2 of Division 2, or Chapter 1 of Division 3, or Chapter 2 of Division 4, or Division 5, of the Welfare and Institutions Code."

The section now reads as first quoted above, and was originally rewritten to so read in 1955.

The purpose of the subsequent injuries legislation is to encourage the employment of handicapped persons by providing for "additional compensation to be paid from a fund (rather than by the employer or his workmen's compensation insurance carrier) to the already handicapped worker who sustains an industrial injury which causes increased permanent disability." (*Subsequent etc. Fund* v. *Industrial Acc. Com.* (1952) 39 Cal.2d 83, 85-86 [244 P.2d 889]; *Ferguson* v. *Industrial Acc. Com.* (1958) 50 Cal.2d 469, 475 [326 P.2d 145]; see also Partial Report Relating to Workmen's Com-

pensation by Senate Committee on Labor, page 13, ''Subsequent Injuries Fund, Historical Background.'')

 Section 4753 was enacted to avoid depletion of the funds in order to encourage the employment of physically handicapped persons and to prevent double recovery for the same disabilities.

In the above mentioned 1955 Partial Report Relating to Workmen's Compensation, it appears that the credit provision of section 4753 as it then stood was virtually useless as too narrowly worded. It appears therefrom that there were cases where injured workmen were paid benefits out of the fund even though they had already been fully compensated by workmen's compensation awards.

A Second Partial Report relating to Workmen's Compensation by Senate Committee on Labor, states: ''. . . (3) That in many cases the awards are based upon some previous disability for which the employee has collected or is collecting compensation benefits or for which injury he has obtained a judgment in damages; (4) That the occurrence of several distinctly separate injuries to an employee can lead to successive awards against the Subsequent Injuries Fund for the same disability . . .'' (P. 8.)

 In the light of this background, it is clear that the Legislature found the predecessors to section 4753 much too restrictive and of little value in actually accomplishing the objective of eliminating double recoveries for the same disabilities. The statute as it now reads is clear and unambiguous. The additional compensation ''shall be reduced to the extent of any monetary payments *received* by the employee, *from any source whatsoever, for or on account of said preexisting disability or impairment. . . .*'' (Emphasis added.) The emphasized portions above seem to be the ones most involved in solving the immediate problem. The decision of the commission after reconsideration is based upon its opinion that the Subsequent Injuries Fund should receive no credit for the social security disability benefits being received by the employee, upon the ground that the social security payments are not being received by the employee ''for or on account of said preexisting disability or impairment . . .''; that since the social security payments are being received due to the total disability (the preexisting disability and the subsequent injury combined) then as the statute does not specifically cover this situation, no credit can be had.

This is an erroneous construction of the section. ▐ The statute must be construed with a view toward giving effect to the evident purpose and object of the statute. ▐ Social security disability payments are not within any of the exceptions stated in section 4753. The Legislature removed from the earlier version of section 4753 the narrow limitation "monetary payments the employee is receiving from any federal or state fund to which he has not directly contributed" and replaced it with the broadest possible language, payments "from any source whatsoever. . . ." This clearly indicates the intent of the Legislature to cover situations such as social security disability payments. ▐ Social security disability payments are not paid to him because he sustained an industrial injury rendering him 31.75 per cent disabled, but because the industrial injury and a certain pre-existing disability combined to render him totally industrially disabled. The payments are paid because of *both*. To some extent, then, the social security disability benefits are paid "for or on account of said preexisting disability or impairment. . . ." (§ 4753.) The whole includes its parts. It is unreasonable to read section 4753 as though it stated "any monetary payments received . . . for or on account of said preexisting disability or impairment, provided that such payments are wholly for such preexisting disability."

Thus, if it can reasonably be said that the social security disability payments are in some part accountable to the preexisting liability for which the Subsequent Injuries Fund is liable, then some credit should be allowed. The referee's holding in this regard was proper, that the fund is entitled to a credit of 68.25 per cent (the percentage attributable to the preexisting disability) of the $118 (social security disability monthly payments). This reduced to a weekly figure is equivalent to a credit of $18.53 per week so long as the employee continues to receive the payments. The rate (68.25 per cent) of credit is constant, so no problem of computation is ever involved.

As to the word "received" used in section 4753, it should be noted that the original enactment of this section used the words "is entitled to receive" and the 1949 amendment changed this to "is receiving." "Received" is the past tense of "receive." There is no doubt as to the meaning of the clause "shall be reduced to the extent of any monetary payments *received* by the employee. . . ." (Emphasis added.)

If the employee has received any monetary payments for or on account of his prexisting disability, then the fund can take credit for it. The only difficulty is, as in the present case, where the employee has received some of the payments and is still entitled to receive payments from social security in the future along with payments from the Subsequent Injuries Fund. In other words, when must the payments, which are to be credited, have been received by the employee; before the fund's liability is determined, after its liability is determined, or when?

 The most reasonable interpretation of the statute in this respect is as hereinafter set forth. When an award issues against it, the fund makes weekly payments to an employee for the period specified in the award. It should be noted that the liability of the Subsequent Injuries Fund is a contingent one which continues week to week only if the employee is alive. Thus, the amount fixed in the award does not conclusively establish the actual liability of the fund, since payments by the fund cease on the death of the recipient regardless of the total amount awarded.

 Properly construed, then, the language of Labor Code section 4753 providing that Subsequent Injuries Fund compensation "shall be reduced to the extent of any monetary payments received by the employee" requires that if an employee has received any payment (except from those sources specifically enumerated in section 4753) on account of his preexisting disability *as of the time the fund is to disburse a weekly payment,* credit should be taken by the fund for this payment already received. Thus, the social security disability benefits already received by the applicant herein as of the time a Subsequent Injuries Fund weekly payment becomes due him should be credited to the fund. This construction is consistent with the wording of section 4753, and is most in keeping with the obvious purpose of the Legislature in amending Labor Code section 4753 in 1955; that is, to insure that credit be given the fund in all cases except for benefits from the specific sources excepted. The language of a statute is to be construed to promote rather than defeat the obvious purpose of the Legislature. (See *In re Goddard* (1937) 24 Cal.App.2d 132, 140 [74 P.2d 818].)

The history of section 4753 shows that the Legislature was trying to broaden its coverage each time the section was amended.

Respondents contend that historically the Attorney General in seeking change in section 4753 was concerned only with credit for prior industrial awards. Actually, the Attorney General, although emphasizing the above, contends that he was likewise concerned with credit generally. ▮ At any rate, that the Legislature in amending the section in 1955 intended to provide for credit for more than industrial awards is demonstrated by the exceptions which it placed in section 4753. They are, pensions or other compensation for disability incurred in the armed forces, assistance for needy children, for old age, for county aid and relief to indigents and for the blind. None of these latter payments are for industrial disability, and if, as contended by respondents, the credit provided in section 4753 was intended by the Legislature to be limited to payments for industrial liability, there would have been no reason for expressly excluding the payments listed above. They would necessarily have been excluded by such definition.

The words "from any source whatsoever" are clear and their meaning definite. As before stated, the Legislature was aware that workmen were getting double compensation for their preexisting disabilities from various sources, including tort damages. To arrive at any sort of consistency in accomplishing the purpose of the statute, the Legislature intended to prevent double recoveries of any sort, resulting in a more equitable outlay of public monies. "[F]rom any source whatsoever" means just that. If such coverage is found to be too broad, the Legislature may change it. ▮ We must apply the statute according to the legislative intent as expressed. We cannot rewrite the statute.

The commission attempts to analogize the social security benefits to payments under a private insurance policy, and contends that if credit is allowed for the first it would have to be allowed for the second, and that result, it declares, would make the statute unconstitutional as it "would penalize the prudent and reward the imprudent." ▮ Without determining the correctness of the commission's assumptions, we should point out that the liability of the state under the Subsequent Injuries Fund is an exercise of the state police power in implementing a complete system of workmen's compensation under the Constitution (art. XX, § 21). ▮ The Legislature may impose such restrictions and limitations as it deems fit for payments made thereunder. ▮ The sec-

tion should be interpreted in a similar manner as would a Welfare and Institutions Code section, under which if one has a certain amount of other property or other income one may not receive aid. Thus, here, if Hanson received payments from any source whatsoever, with respect to the preexisting disability, credit should be allowed the Subsequent Injuries Fund, as public monies should not be paid out to persons who have already been compensated for their disability.

It should be kept in mind that the code sections dealing with subsequent injuries are a part of the workmen's compensation laws of this state. They are not to be construed in such a manner so as to make them a state health plan or welfare organ. (See *Ferguson* v. *Industrial Acc. Com., supra,* 50 Cal.2d 469, 477.) There are other code provisions to take care of such problems. If we were to adopt the construction advocated by the commission, that is just what the Subsequent Injuries Fund would become, in effect.

The opinion and decision, after reconsideration, is annulled, and the case remanded for further proceedings consistent with this opinion.

Sullivan, J., and Molinari, J., concurred.