RONALD FLORES, Claimant-Appellee, *v.* CITY AND COUNTY OF HONOLULU, DEPARTMENT OF PARKS AND RECREATION, Employer-Appellee, Self-Insured, and SPECIAL COMPENSATION FUND, Appellant

NO. 9972

(CASE NO. AB 81-383 (2-80-03154))

JUNE 17, 1985

PADGETT, ACTING C.J., HAYASHI, WAKATSUKI, JJ., AND INTERMEDIATE COURT OF APPEALS CHIEF JUDGE BURNS, IN PLACE OF LUM, C.J., RECUSED, AND INTERMEDIATE COURT OF APPEALS ASSOCIATE JUDGE TANAKA, IN PLACE OF NAKAMURA, J., DISQUALIFIED

OPINION OF THE COURT BY HAYASHI, J.

The Special Compensation Fund (SCF) appeals from the Decision and Order filed January 19, 1984 and the Order Denying Motion for Reconsideration filed March 23, 1984 by the Labor and Industrial Relations Appeals Board (Board). The Board found the claimant permanently and totally disabled from a heart condition as of May 22, 1980. It found the claimant's work injury responsible for twenty-percent of the disability and apportioned liability to the City and County of Honolulu, the employer, in that amount. It held the SCF responsible for the remainder of the claimant's compensation. For the reasons stated below, we affirm the decision of the Board.

I.

On December 11, 1979, Ronald Flores (hereinafter "Claimant"), aged 40 at the time, was employed as a groundskeeper for the Department of Parks and Recreation of the City and County of Honolulu (hereinafter "City"). He started his employment with the City on October 10, 1979 after a year in the CETA program. As he was mowing some grass he felt a strong pain in his chest and had difficulty breathing. He was admitted to Straub Hospital the next day.

The record indicates a number of prior work injuries that have led to back problems for Claimant. But Claimant had no previous cardiac history. Dr. Roger L. White, the attending physician diagnosed Claimant's problem as Probable Acute Inferior Wall Myocardial Infarction, a heart attack. After a week of observation Claimant was discharged on December 19, 1979.

On January 28, 1980, Claimant underwent a treadmill stress test. The findings were "unremarkable." Claimant returned to work two days later, but because of severe chest pains and shortness of breath he ceased his employment on February 6, 1980 and has not worked since then.

On February 12, 1980, a cardiac catheterization was conducted. Dr. David J. G. Fergusson found that the right coronary and left circumflex arteries were totally occluded. However, bypass surgery was not recommended for the time being.

On May 21, 1980, Dr. White wrote to the City:

As you know, Mr. Flores had a myocardial infarction in December, 1979. Since that time he has been unable to do his work as a groundskeeper. He has had continued angina pain which has caused him to be totally disabled . . . . I think that he would be unable to return to gainful employment at this time and should be considered totally disabled.

Record at 14.

Dr. Jack H. Scaff, Jr. examined Claimant to determine impairment ratings for apportionment purposes between the employer and the SCF for possible compensation to Claimant. On July 16, 1980, he reported that Claimant's "Impairment of a Whole Man" rating was twenty-percent. He also noted that one-percent of the injury was apportionable to work-related causes.

Dr. Ernest K. H. Lee examined Claimant. On November 3, 1980 he reported that there was no evidence in Claimant's history to indicate heart disease prior to his accident. He stated surgery would not improve his condition. On November 26, 1980, Dr. Lee added that Claimant's impairment was "Class III, 70% impairment of the whole man."

The hearing at the Disability Compensation Division (DCD) of the Department of Labor and Industrial Relations was held on May 19, 1981. The DCD looked at the aforementioned reports and other medical records and heard statements from witnesses. On August 14, 1981, it determined Claimant was totally and permanently disabled as of May 22, 1980. It determined the City was totally liable for the compensation to Claimant.

The City appealed this decision to the Board on August 28, 1981.

On January 18, 1982, Claimant underwent quadruple coronary bypass graft surgery performed by Dr. Richard Mamiya at Straub Hospital. His condition temporarily improved.

On January 11, 1983, the SCF was joined as a party to the appeal by the City of the DCD decision.

On March 24, 1983, Dr. White wrote that Claimant's ar-

teriosclerosis existed prior to the infarction of December, 1979, but it was in an asymptomatic form.

The Board hearing was held on March 29, 1983. The aforementioned reports were made a part of the record. Additionally, a March, 1982 evaluation by Dr. Stewart Matsumoto rated Claimant at twenty-percent disabled due to the work injury.

The Board filed its decision on January 19, 1984 and apportioned the compensation liability as stated above. The Motion for Reopening and Reconsideration filed by the SCF on February 15, 1984 was denied by the Board on March 23, 1984.

## II.

A number of issues are raised on this appeal. First, whether under Hawaii Revised Statutes (hereinafter "HRS") § 386-33, a previous disability must be manifest pre-employment before an employer's liability for disability compensation will be apportioned with the SCF. Second, if the apportionment was proper, whether the Board erred in finding the City liable for twenty-percent and the SCF for the rest. Third, whether the Board erred in finding Claimant's total permanent disability effective as of May 22, 1980.

## A.

HRS § 386-33 (1976), as it applied at the time of the claim,[1] provided:

§ *386-33 Subsequent injuries which would increase disability.* If an employee receives an injury which of itself would cause a permanent partial disability but which, combined with a previous disability, results in a greater permanent partial disability or in permanent total disability, the employer shall pay compensation only for such disability as would have been caused by the injury without the previous disability. The employee shall be

---

[1] The section was rewritten in 1982 and amended in 1984. A comprehensive revision of HRS Chapter 386, House Bill 463, was enacted by the 1985 state legislature and presently awaits the governor's signature. However, none of the changes affects the general apportionment scheme.

entitled to full compensation for his actual permanent partial or total disability, and, after receipt of the compensation payable by the employer, weekly payments of the balance of the compensation to which the employee is entitled shall be made out of the special compensation fund by orders of the director of labor and industrial relations.

We are asked to construe whether this statute requires that the previous disability be a manifest one pre-employment before apportionment with the SCF can be made. This manifestation question comes into play because of this court's interpretation of the legislature's intent in enacting HRS § 386-33 that "it wanted to encourage the hiring of persons already handicapped by preexisting permanent partial disabilities." *Crawford v. Financial Plaza Contractors,* 64 Haw. 415, 423, 643 P.2d 48, 53 (1982). It is argued that if the injury was not manifest at the time of hiring, the employer could not have been encouraged to hire a "handicapped" person.

Looking strictly at the language of the statute itself, a preemployment manifestation of the injury is not required. But statutory construction involves more than a perfunctory review of the statutory language:

"But we have rejected an approach to statutory [interpretation] which limits us to the words of a statute, no matter how clear they may appear upon perfunctory review." *Crawford v. Financial Plaza Contractors,* 64 Haw. 415, 420, 643 P.2d 48, 52 (1982). For we recognize "our primary duty [in interpreting statutes] is to ascertain the intention of the legislature and to implement that intention to the fullest degree," *Keller v. Thompson,* 56 Haw. 183, 189, 532 P.2d 664, 669 (1975); and where "there is . . . material evidencing legislative purpose and intent, there is no reason for a court to seek refuge in 'strict construction,' 'plain meaning,' or 'the popular sense of the words.'" *Black Construction Corp. v. Agsalud,* 64 Haw. 274, 284, 639 P.2d 1088, 1094 (1982), *appeal dismissed,* 459 U.S. 1011 (1982).

We therefore turn to the history of HRS § [386-33] to ascertain whether the legislature might have had another meaning in mind when it adopted the language in question. But "we do so with the recognition that only [a clear] showing of contrary intentions from that data would justify a limitation on the 'plain

meaning' of the statutory language." *Garcia v. United States,* ____ U.S. ____, ____, 105 S. Ct. 479, 482-83, 53 U.S.L.W. 4016, 4017 (U.S. Dec. 10, 1984).

*Kaiama v. Aguilar,* 67 Haw. 549, ____, 696 P.2d 839, ____ (1985).

We have already reviewed the legislative history of HRS § 386-33 and ascertained its intent in *Crawford.* We must now determine whether that intent can be implemented by requiring a manifestation of the previous injury prior to employment.

"The federal courts, applying the [federal] Longshoreman's Act, have applied the 'obviously manifested' requirement . . . ." 2 A. Larson, *The Law of Workmen's Compensation,* § 59.33(a) at 10-463 (1983) (hereinafter "Larson"). But states implementing their own second injury fund laws are split on this issue.

Some states have held that where a preexisting injury was latent and asymptomatic, second injury funds cannot be held liable for any disability. *Jones v. State, Industrial Special Indemnity Fund,* 104 Idaho 337, 659 P.2d 91 (1983).

Other states have gone further in not only requiring that a previous injury be manifest but also that an employer have knowledge of the manifest previous injury. *Flor-A-Crete Industries Inc. v. Drake,* 409 So. 2d 1196 (Fla. App. 1982); *Spencer v. Daniel Construction, Co.,* 4 Kan. App. 2d 613, 609 P.2d 687 (1980); *Bass v. Westchester Concrete, Inc.,* 84 A.D.2d 634, 444 N.Y.S.2d 283 (1981); *Brown v. John Martin Construction, Co.,* 642 S.W.2d 145 (Tenn. 1982).

Then, some states have apportioned liability to second injury funds even without a manifestation of the previous injury before the employment. *Ferguson v. Industrial Accident Commission,* 50 Cal. 2d 469, 326 P.2d 145 (1958); *Jacques v. H. O. Penn Machinery Co.,* 166 Conn. 352, 349 A.2d 847 (1974).

Each of these cases provides strong reasons for their positions that can support whatever approach this court will decide to take.

We have previously provided three conditions which must be met before benefits could be apportioned:

> The conditions are, one, the employee must have had a permanent partial disability; two, the permanent partial disability must preexist employment; and, three, the employee's [disability] must result from a combination of the preexisting disability and a subsequent work-related injury.

*Survivors of Medeiros v. Maui Land & Pineapple Co.,* 66 Haw. 290, 293, 660 P.2d 1316, 1319 (1983).

Here, there is evidence that Claimant's heart condition was a permanent partial disability that preexisted his employment although it was in an asymptomatic form. It is clear that condition combined with his subsequent myocardial infarction to produce his total disability. The three conditions are thus met. To these requirements we are asked to add a fourth requirement that the previous disability be manifest prior to employment.

"In our view, the sounder approach . . . is exemplified by the California cases. As argued in Larson . . . the requirement of manifestation or employer knowledge 'is defensible only if it is assumed that the exclusive purpose of the second injury principle is to encourage the hiring of the handicapped. This is, of course, the central purpose — but the principle also embraces the idea of achieving this result in a way that works hardship on neither the employer nor the employee.' " *Jacques,* 166 Conn. at 361, 349 A.2d at 851-2 (quoting 2 Larson, *Workmen's Compensation Law,* § 59.33 at 88.153).

This court has noted other purposes in the enactment of HRS § 386-33. We have noted the humanitarian purpose for which the statute was enacted for the employee's benefit. *Crawford,* 64 Haw. at 421, 643 P.2d at 52. We have also noted that through this statute "employers will be required to pay compensation only for the loss actually sustained in their employment." *Crawford,* 64 Haw. at 422, 643 P.2d at 53 (quoting Sen. Stand. Comm. Rep. No. 43, in '1937 Senate Journal, at 293).

To require that a previous injury be manifest before compensation liability can be apportioned to the SCF would result in employers having to shoulder payments to employees for losses sustained outside of their employment. This will not comport with the advancement of the purposes for which the statute was enacted.

Granted one purpose of the statute may be subsumed to advance the position of the employer. Perhaps to avoid such conflicts in purposes and to avoid unnecessary litigation, some states have required by legislation that preexisting injuries be registered with the commission administering the second injury fund.[2] The legisla-

---

[2] *See,* Minn. Stat. Ann. § 176-131 (West Supp. 1985).

ture, in time, may find it feasible to adopt a similar approach for Hawaii. Or it may prefer to explicitly require previous injuries to be manifest.

Absent such a specific legislative pronouncement we can find no clear showing of a contrary intention to the plain meaning of HRS § 386-33. The pre-employment manifestation of a previous injury is not required before apportionment with the SCF can be made. As we held in *Medeiros,* it is only necessary that the three requirements pronounced there be met before apportionment can be made. Unlike *Medeiros* which was lacking in evidence to show that the disease preexisted the claimant's employment, there is evidence here that Claimant's heart condition preexisted his employment. Thus, the apportionment with the SCF was proper.

B.

The remaining points raised on appeal involve findings made by the Board on the apportionment ratio and the date of total permanent disability. Such administrative findings will not be reversed unless they are clearly erroneous. *Camara v. Agsalud,* 67 Haw. 212, 685 P.2d 794 (1984); *Wailuku Sugar Co. v. Agsalud,* 65 Haw. 146, 648 P.2d 1107 (1982).

On the two issues noted above, the findings of the Board are supported by substantial evidence and a thorough review of the record does not leave this court with a definite and firm conviction that a mistake has been made. *Agsalud v. Lee,* 66 Haw. 425, 664 P.2d 734 (1983).

Accordingly, the decision of the Appeals Board is affirmed.

*Wayne A. Matsuura, (Robyn M. Kuwabe* with him on the opening brief) Deputy Attorneys General, on the briefs for appellant.

*Charlotte J. Duarte,* Deputy Corporation Counsel, on the brief for employer-appellee, self-insured.

*Lowell K. Y. Chun-Hoon* and Sharlyne T. Palacio (*King, Nakamura & Chun-Hoon of counsel), on the brief for claimant-appellee.*