**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000065
14-JAN-2022
07:46 AM
Dkt. 37 SO**

NO. CAAP-18-0000065

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

KATHLEEN K. OKA, Claimant-Appellant-Appellant
v.
CITY AND COUNTY OF HONOLULU, CITY CLERKS OFFICE,
Employer-Appellee, Self-Insured-Appellee,
and
CITY AND COUNTY OF HONOLULU, DEPARTMENT OF HUMAN
RESOURCES/ISWC, Adjuster-Appellee-Appellee

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2014-202; DCD NO. 2-03-13472)

SUMMARY DISPOSITION ORDER
(By:  Ginoza, Chief Judge, Leonard and McCullen, JJ.)

In this worker's compensation case, Claimant/Appellant-Appellant Kathleen K. Oka (**Oka**) appeals from the Decision and Order of the Labor and Industrial Relations Appeals Board (**Board**) entered on January 10, 2018, affirming the Decision and Order of the Director of Labor and Industrial Relations (**Director**) entered on July 3, 2014.[1]  In its July 3, 2014 decision, the Director determined that due to a work injury, Oka was entitled to additional temporary total disability benefits from October 22, 2010 until March 2, 2011, 28% permanent partial disability of the whole person for her neck injury and 15% permanent partial

---

[1]  Members Melanie S. Matsui and Marie C.L. Laderta issued the Board's Decision and Order, with a dissenting opinion by Chair D.J. Vasconcellos.

disability of the whole person for psychological problems, for a total of 43% permanent partial disability, and $1,000 for certain disfigurement compensation benefits from Employer/Appellee-Appellee City and County of Honolulu (**City**).  Oka appealed and the sole issue before the Board was the extent of Oka's permanent partial disability or permanent total disability resulting from the work injury.

On appeal, Oka's primary contention is that the Board erred in determining she is not permanently totally disabled (**PTD**) under the odd-lot doctrine.  In connection with this point, Oka also challenges the Board's Findings of Fact (**FOFs**) numbers 53, 54, 55, 56, and 57 as clearly erroneous.[2]

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant legal authorities, we conclude the Board erred in finding Oka failed to make a prima facie showing that she fell within the odd-lot category for PTD.

A direct appeal from a Board decision is reviewed according to Hawaii Revised Statutes (**HRS**) § 91-14(g) (2012 and Supp. 2019).[3]

_____

[2]  In her concise statement of the points of error, Oka challenges ten FOFs entered by the Board.  However, in her opening brief, Oka does not argue her points of error regarding FOFs nos. 24, 29, 42, 44, and 52, so they may be deemed waived.  See Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(7) ("Points not argued may be deemed waived.").

[3]  HRS § 91-14(g) provides:

> (g) Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> > (1)    In violation of constitutional or statutory provisions;
> >
> > (2)    In excess of the statutory authority or jurisdiction of the agency;

(continued...)

2

> Appeals taken from findings of fact set forth in decisions of the Board are reviewed under the clearly erroneous standard. Thus, this court considers whether such a finding is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. The clearly erroneous standard requires this court to sustain the Board's findings unless the court is left with a firm and definite conviction that a mistake has been made.
>
> A conclusion of law is not binding on an appellate court and is freely reviewable for its correctness. Thus, this court reviews conclusions of law *de novo*, under the right/wrong standard.

Bumanglag v. Oahu Sugar Co., 78 Hawaiʻi 275, 279, 892 P.2d 468, 472 (1995) (brackets and ellipsis omitted) (quoting Tate v. GTE Hawaiian Tel. Co., 77 Hawaiʻi 100, 102-03, 881 P.2d 1246, 1248-49 (1994)).

> The Hawaiʻi Supreme Court has noted,
>
> > One of the more colorful, but apt, definitions of the odd-lot doctrine comes from Judge Cardozo:
> >
> > > He [the plaintiff] was an unskilled or common laborer. He coupled his request for employment with notice that the labor must be light. The applicant imposing such conditions is quickly put aside for more versatile competitors. Business has little patience with the suitor for ease and favor. He is the 'odd lot' man, the 'nondescript in the labor market.' Work, if he gets it, is likely to be casual and intermittent. Rebuff, if suffered, might reasonably be ascribed to the narrow opportunities that await the sick and the halt.

Yarnell v. City Roofing Inc., 72 Haw. 272, 274-75, 813 P.2d 1386, 1388 (1991) (ellipsis omitted) (quoting Jordan v. Decorative Co., 130 N.E. 634, 635-36 (N.Y. 1921)).

---

[3](...continued)

    (3)    Made upon unlawful procedure;

    (4)    Affected by other error of law;

    (5)    Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

    (6)    Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Under the odd-lot doctrine:

> If the evidence of degree of obvious physical impairment, coupled with other facts such as claimant's mental capacity, education, training, or age, places claimant prima facie in the odd-lot category, the burden should be on the employer to show that some kind of suitable work is regularly and continuously available to the claimant.

Id. at 275, 813 P.2d at 1388 (citing 2 A. Larson, Workmen's Compensation Law § 57.61(c) at 10-178).  Moreover,

> The item missing from claimant's list of considerations is any evidence as to specific availability of employment. In other words, there is a presumption that, if claimant suffers physically, and bears the additional characteristics, then he has proved the prima facie case. The employer then has the burden to prove the existence of regular suitable employment.

Id. (emphasis added).  In short, a claimant asserting application of the odd-lot doctrine has the initial burden of making a prima facie case that the claimant falls into the odd-lot category; if the claimant makes a prima facie case, the burden shifts to the employer to establish the existence of regular suitable employment for the claimant.  Id. at 275-76, 813 P.2d at 1388-89. Whether a claimant falls into the odd-lot category is a question of fact.  Id. at 276, 813 P.2d at 1389.  Whether the employer shows some kind of suitable work is regularly and continuously available to the claimant is also a question of fact.  Id.

In Atchley v. Bank of Hawaiʻi, the Hawaiʻi Supreme Court affirmed the Board's finding that claimant was not permanently and totally disabled either medically or on an odd-lot basis where the claimant was "a highly educated, professional man with marketable skills and an ability to engage in profitable behavior."  80 Hawaiʻi 239, 245, 909 P.2d 567, 573 (1996).  The Claimant in Atchley received "the equivalent of a bachelor's degree with graduate studies[,]" had extensive background in the banking industry and was employed as an assistant branch manager for Bank of Hawaiʻi when he was injured at work.  Id. at 240, 909 P.2d at 568.  The Board found that claimant demonstrated an ability to work following his second surgery and did so as an assistant branch manager for four hours a day from September 1989

to May 1990 at which point Claimant voluntarily chose to stop working.  Id. at 244, 909 P.2d at 572.  A medical report stated that after soft tissue therapy, "Claimant improved considerably as his subjective complaints lessened by 50 percent and lumbar range of motion increased."  Id. However, claimant considered himself to be significantly physically impaired, stating that he was unable to be active on a daily basis for more than one hour. Id.

> The supreme court noted that:

> Claimant has significant transferable skills within the banking and the financial community which can be utilized to secure sedentary employment, and his situation is dramatically different from the typical odd-lot claimant who is elderly, performs manual labor, has little or no education, limited language skills, and additionally may suffer from some kind of mental disorder or incapacity. See, Tsuchiyama v. Kahului Trucking and Storage, Inc., 2 Haw. App. 659, 638 P.2d 1381 (1982).

Atchley, 80 Hawai'i at 245, 909 P.2d at 573.

In Tsuchiyama, this Court affirmed the Board's finding that the claimant fell within the odd-lot category where the claimant had a high school education, did not speak English well, was employed as a mechanic for over 40 years, sustained a back injury resulting in 16% to 25% permanent total disability of the whole person when he was 62 years old, could not engage in any activity which required lifting more than 20 pounds, suffered pain on sitting which became severe after a relatively short time and had pain in squatting, etc., and employers were reluctant, as was testified, to employ persons with known back trouble.  2 Haw. App. at 660-61, 638 P.2d at 1382-83.

In this case, the Board found that Oka failed to meet her burden of making a prima facie showing that she fell within the odd-lot category "based on the entire mix of evidence, including [Oka's] impairment ratings, which supported the [permanent partial disability] award made by the Director, in combination with her age, mental capacity, work experience, transferable skills, and education[.]"  In this regard, the Board clearly erred.

Oka has a high school education, attended Cannon's Business School for two years although she did not obtain a degree, was employed by the City as a city council aide from 1975 for almost 30 years, and sustained neck and psychiatric injuries that resulted in 43% permanent partial disability of the whole person.  The Board found that Oka was close to 49 years old at the time of the work injury and close to 61 years old at the time of trial, voluntarily retired from employment with the City on December 31, 2009, participated in more than 30 vocational rehabilitation (**VR**) meetings, and completed her VR plan with counselor Faith Lebb (**Lebb**).  Lebb stated in a final VR report on September 30, 2010 that she found Oka "motivated and resilient" during the VR process.  At trial, Lebb testified she looked for general clerical or customer service positions for Oka, that Oka expressed interest in a variety of other potential occupations "such as travel, travel agent, such as working in a physical therapy place, [and] fingerprinting[,]" and that Lebb investigated and explored all those potential occupations. Furthermore, Oka testified that she made more than 100 contacts with employers seeking employment by either mailing or calling them, and submitted many applications for jobs, but did not receive an offer to interview and was unable to find employment. Oka further testified that she did not tell potential employers about her limitations, was interested in being employed and was motivated by "survival."  The Board did not question the credibility of the VR evidence or Oka's efforts in seeking employment.

Oka testified at trial that as a result of her injury, she has a constant "nagging pain that goes from [her] neck to [her] fingers" on her right arm, that her fingers feel "numb and tingly like when normally people's feet kind of fall asleep[,]" which affects her ability to use her right hand.  Oka also has stiffness in her back and is not too mobile and cannot sit or stand for very long.  Oka further testified that she is unable to grasp things with her right hand although she is right-handed,

her small motor skills have been affected, and Oka is unable to use chopsticks with her right hand, and learned to use her foot or feet to pick things up because she is unable to do so with her right hand.  Oka testified, *inter alia*, she is unable to type or cook with her right hand, on occasional days will skip washing her hair if her arm is really bothering her, and her clothing has no buttons or zippers because she is unable to manipulate those things.  Moreover, Oka testified that due to her medication, she sleeps about two hours a night on average and might have another hour or so during the day if she is lucky, and due to her lack of sleep and the medication, Oka has a hard time following oral instructions, loses the trail of information given, lacks concentration, and "kind of drift[s] off and tune[s] out."

The Board credited the opinions and reports of Dr. Izuta, Oka's treating physician, Dr. Lau, Dr. Ozoa, and Dr. Okawa over that of Dr. Mitsunaga regarding Oka's ability to work.  "An appellate court will decline to consider the weight of the evidence presented or to review the findings of fact by passing upon the credibility of witnesses or conflicts in the testimony." Application of Akina Bus Serv., Ltd., 9 Haw. App. 240, 244, 833 P.2d 93, 95 (1992) (citation omitted).

On August 31, 2009, Psychiatrist Dr. Frank Izuta (**Dr. Izuta**) prepared an "Estimated Capacity & Limitation Form" restricting Oka to a sedentary type job.  On August 28, 2015, Dr. Izuta prepared a Physicians Report which continued to restrict Oka to a sedentary type job and opined that Oka could lift ten pounds occasionally, five pounds frequently, sit 30 to 60 minutes without breaks during a total work shift, stand 20 to 30 minutes without breaks for no more than four hours a shift, walk 10 to 20 minutes without breaks for no more than three hours a shift, occasionally bend and twist at the waist, frequently bend at the knees, and rarely work above chest height.

The Board also found that Dr. Clifford Lau (**Dr. Lau**) opined that Oka could work with restrictions or accommodations. However, as Chair Vasconcellos noted in his dissent, Dr. Lau

7

testified at trial that his assessment of Oka's employability was based upon her physical musculoskeletal problems alone and was not based on any of Oka's psychological assessments.  At trial, Dr. Lau testified that he never assessed Oka's employability based on her two psychological disorders, her ability to concentrate from a psychological perspective, her fatigue, her ability to attend work on a day-to-day basis, and/or her tolerance for frustration.

In her March 1, 2013 report, psychologist Dr. Judy Okawa (**Dr. Okawa**) summarized the effect Oka's impairment would have to her concentration and adaptation as follows:

> 64.    Activities of Daily Living: Class 2: MILD IMPAIRMENT. . . . [Ms. Oka's] ability to travel outside of her secure home base has been affected since last August when she began suffering multiple panic attacks with agoraphobia.  Ms. Oka began to be afraid of enclosed places or situations from which she could not easily leave, such as being stuck in traffic on the H-1, being in a crowd, flying in an airplane, waiting in line, or getting stuck in an elevator. Without proper treatment, these anxiety symptoms could grow worse.
>
> . . . .
>
> 66.    Concentration, Persistence, & Pace: Class 3: MODERATE IMPAIRMENT. Ms. Oka becomes fatigued very easily and her concentration is impaired. <u>Her ability to maintain focused attention is variable</u>. Contributory factors include depression, lack of energy, deep fatigue, severely disturbed sleep, and the Oxycontin she takes regularly to manage her pain.  While Ms. Oka showed persistence in trying to complete tasks over the limited time of an hour-and-a-half-long evaluation session, <u>it is not likely that she would be able to persist consistently over a period of a number of hours on a daily basis while dealing with chronic pain. It is also unlikely that she would be able to perform at a consistent pace **without an unreasonable number of rest periods**, given her chronic pain condition and the fatigue and anxiety that accompany it</u>.
>
> 67.     Adaptation: Class 3: MODERATE IMPAIRMENT. Along with chronic pain and her dependence on Oxycontin, <u>Ms. Oka's symptoms of depression and anxiety (including panic attacks) are likely to affect her attendance at work and her ability to consistently make decisions easily and complete tasks expeditiously. Test results reveal that she is likely not able to cope well with stress and that she has a low tolerance for frustration. Stress at the workplace will exacerbate her anxiety, which will in turn exacerbate her pain and make it difficult for her to concentrate</u>. This is unfortunate, because she strikes me as a conscientious, dedicated person who would be an asset to an employer if she were not suffering from chronic pain that occupied all her energy.

(Emphases added).

Based on this record, including the evidence of Oka's work with Lebb in VR and Oka's extensive efforts to contact and apply with potential employers without receiving any interviews or offers, the pain and physical limitations Oka testified she was experiencing, her age, Dr. Okawa's opinions about the likely impact her depression and anxiety would have on her attendance at work, ability to complete tasks expeditiously, and low tolerance for frustration, and Dr. Izuta's report regarding Oka's physical limitations in motion and ability, Oka made a prima facie showing that she fell within the odd-lot category.  Moreover, unlike the claimant in <u>Atchley</u>, Oka does not have a higher education degree and her limited motion and ability, specifically in her right hand, and psychological limitations in her ability to maintain focused attention, negatively affect the transferable skills from Oka's training and prior work experience as a city council aide.[4] Therefore, based upon the reliable, probative, and substantial evidence in the whole record, the Board clearly erred in determining that Oka did not make a prima facie showing that she falls within the odd-lot doctrine.

The Board did not make any findings of fact regarding whether the City presented evidence of available work, and thus, we remand for further proceedings.  <u>See</u> <u>Yarnell</u>, 72 Haw. at 276, 813 P.2d at 1389 (holding whether the employer failed or succeeded in its burden of proof that there was suitable

---

[4]  In its FOFs, the Board found:

> 2. As a council aide, [Oka] coordinated and directed activities preparatory and incidental to the overall functions of the city council. Her job duties included the following: meeting and conferring with departmental officials; preparing agendas for council meetings and hearings; selecting, assembling, summarizing, and compiling substantive information on agenda items for the council, preparing minutes for all meetings, briefings, workshops, and task forces; reviewing correspondence and referring matters for follow up to appropriate council members; and composing and finalizing reports.

> 3. In her job as a council aide, [Oka] operated a computer, printer, copier/scanner, fax machine, recorder, and transcription equipment.

employment is a factual question and where there is no factual finding on this portion of the odd-lot test to review, the case should be remanded for further proceedings).

Therefore, IT IS HEREBY ORDERED that the Decision and Order entered on January 10, 2018, by the Labor and Industrial Relations Appeals Board, is vacated.  The case is remanded to the Board for a determination whether the City met its burden to show suitable work is regularly and continuously available to Oka, and ultimately, whether the odd-lot doctrine applies.

DATED:  Honolulu, Hawaiʻi, January 14, 2022.


On the briefs:

Lowell K.Y. Chun-Hoon,
Rosalyn G. Payen,
(King, Nakamura & Chun-Hoon)
for Claimant-Appellant-
Appellant

Karen R. Tashima,
Deputy Corporation Counsel,
for Employer-Appellee, Self-
Insured-Appellee and Adjuster-
Appellee-Appellee

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge