Filed 8/13/24 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| SUBSEQUENT INJURIES BENEFITS TRUST FUND, | 2d Civ. No. B333633 (W.C.A.B. No. ADJ11362885) (Santa Barbara District Office) |
| Petitioner, | |
| v. | ORDER MODIFYING OPINION AND DENYING REHEARING |
| WORKERS' COMPENSATION APPEALS BOARD and NANCY VARGAS, | [No Change in Judgment] |
| Respondents. | |

THE COURT:

It is ordered that the opinion filed herein on July 15, 2024, be modified as follows:

On page 4, first full paragraph, the last sentence beginning "The Fund thus proposed" is deleted and the following sentence is inserted in its place:  The Fund thus proposed it be granted a credit equal to 74 percent of the applicant's SSDI benefits: her stipulated 26 percent subsequent injury rating subtracted from her 100 percent SSDI award.

There is no change in judgment.

Appellant's petition for rehearing is denied.

---

GILBERT, P.J.   BALTODANO, J.   CODY, J.

Filed 7/15/24 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| SUBSEQUENT INJURIES BENEFITS TRUST FUND, <br><br> Petitioner, <br><br> v. <br><br> WORKERS' COMPENSATION APPEALS BOARD et al., <br><br> Respondents. | 2d Civ. No. B333633 <br> (W.C.A.B. No. ADJ11362885) <br> (Santa Barbara District Office) |

Petitioner Subsequent Injuries Benefits Trust Fund (Fund) pays additional compensation to workers who suffer an industrial injury that, when combined with pre-existing disabilities, causes permanent disability equal to 70 percent or more. (Labor Code, § 4751.[1]) Section 4753 requires this additional compensation to "be reduced to the extent of any monetary payments received by the employee, from any source whatsoever, for or on account of such preexisting disability or impairment." This reduction or "credit" preserves state resources by ensuring applicants receive

---

[1] All statutory references are to the Labor Code unless stated otherwise.

benefits commensurate with their combined disabilities—no more, no less.

Respondent Nancy Vargas applied for subsequent injury benefits when she injured her foot at work. The Fund acknowledged Vargas qualified for benefits but claimed section 4753 credit for a significant portion of the Social Security Disability Insurance (SSDI) payments she began receiving after her latest injury. Respondent Workers' Compensation Appeals Board (Board) determined the Fund was not entitled to credit, concluding the Fund had not proven Vargas's SSDI payments were awarded "for or on account of" her pre-existing disabilities.

This petition for review challenges the Board's decision. The Fund contends the Board erred by placing the burden of proof on the Fund to show Vargas received SSDI benefits "for or on account of" her pre-existing disabilities. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Respondent Nancy Vargas drove a bus for the Santa Barbara Metropolitan Transit District (district) for 25 years. She injured her foot in March of 2018 while stepping off the driver's pedestal. Vargas settled her claim against the district in December of 2020. They stipulated the injury caused permanent disability of 26 percent and agreed on the amount of her weekly indemnity payments going forward.

Vargas applied for subsequent injury benefits from the Fund while her workers' compensation case was pending. She listed pre-existing disabilities to her back, upper extremities, left knee, and right ankle. She disclosed filing one prior workers' compensation case. Vargas confirmed she had applied for SSDI in January of 2018 and was currently receiving monthly SSDI payments of $940. The Board granted Vargas's motion to join the

Fund as a defendant in her worker's compensation case in July of 2021.

The Fund agreed Vargas was eligible for benefits. The parties stipulated: (1) that Vargas had a "preexisting labor-disabling disability"; (2) her subsequent injury, i.e., the March 2018 foot injury, caused permanent disability of 26 percent; and (3) her combined disabilities meant she was now 100 percent totally disabled. They also agreed Vargas met the "opposite member" eligibility threshold for subsequent injury benefits because she suffered injuries to both feet. The parties disputed, however, the Fund's right to section 4753 credit for Vargas's SSDI payments.[2] The issue went to trial in May of 2023. The workers' compensation judge (WCJ) admitted the parties' stipulated facts and exhibits as evidence but heard no live testimony.

Vargas introduced three medical reports as exhibits: (1) one from an agreed medical examiner (AME) evaluating her March 2018 foot injury; (2) one from a qualified medical examiner (QME) "assess[ing] her nonindustrial internal medicine disabilities," both current and pre-existing; and (3) one from a second QME evaluating her combined disabilities to determine eligibility for subsequent injury benefits. The AME report rated the March 2018 injury as causing whole person impairment (WPI) of 15 percent. The first QME report rated internal conditions such as liver disease, varicose veins, and COPD (chronic obstructive pulmonary disease) as causing 51 percent

---

[2] The parties' pre-trial conference statement indicates the Fund initially sought credit for both "SSDI and [disability retirement] monies received by applicant." The Fund's petition and supplemental briefs, however, refer only to credit for SSDI payments.

3

WPI.  The second QME report rated her pre-existing impairments at 160 percent WPI.  It concluded "the overall combined effects of the previous pre-existing disability/impairment and the subsequent impairment/disability . . . is greater than that which would have resulted from the subsequent injury alone and, goes well beyond the 70 [percent] disability threshold pursuant [to] Labor Code [section] 4751."  The Fund introduced an award letter from the Social Security Administration (SSA) as an exhibit along with 1099 forms reflecting the SSDI paid to date.  The letter stated SSA considered Vargas disabled as of April 18, 2018 and eligible to receive payments starting in October of 2018.

Vargas's pre-trial brief argued the Fund bore the burden to prove what amount or percentage of the SSDI award was attributable to her pre-existing disabilities.  The Fund rebutted the argument in a post-trial brief.  "[I]n the absence of contrary evidence," the Fund wrote, "the Board should simply deduct the permanent disability percentage attributed to the subsequent compensable injury from the 100 percent permanent disability found [by SSA]."  The Fund thus proposed a 74 percent reduction of benefits:  her stipulated 26 percent subsequent injury rating subtracted from her 100 percent SSDI disability award.

The WCJ found the Fund "ha[d] not met their burden to show an entitlement to credit for social security disability award nor any other disability retirement benefit."  The Board denied the Fund's petition for reconsideration, finding "section [4753] does not state that credit is absolute.  [The Fund] would need to show that the monetary payment received is for or on account of such pre-existing disability or impairment.  [It] did not show that in this case."  The Board noted Vargas's award letter and subsequent SSDI statements "did not describe the basis of the

4

benefit." It concluded "[w]hat is before the court without assumptions does not establish credit and therefore no credit was awarded."

We granted the Fund's petition for a writ of review. (§ 5950.)

## DISCUSSION

The Fund contends the Board misinterpreted section 4753 by placing the burden on the Fund to prove its right to credit for Vargas's SSDI payments.

"'In reviewing an award or decision made by the [Board], we are governed by familiar principles. The [Board]'s factual findings, when supported by substantial evidence, are binding on us. [Citations.]' [Citation.] "'"Questions of statutory interpretation are, of course, for [a] court to decide. [Citations.]"'" [Citation.] 'However, although the [Board's] conclusions on questions of law are not binding on this court [citation], and the interpretation of a labor statute is a legal question subject to our independent review [citation], we nevertheless "generally defer to the [Board's] interpretation of labor statutes unless clearly erroneous" [citation].' [Citation.]" (*Meadowbrook Ins. Co. v. Workers' Comp. Appeals Bd.* (2019) 42 Cal.App.5th 432, 436.)

The provisions of the Worker's Compensation Act "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." (§ 3202.) "This command governs all aspects of workers' compensation; it applies to factual as well as statutory construction." (*Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, 1065.)

5

*Burden of Proof*

The Fund "is funded and administered by the state for the purpose of compensating workers with prior disabilities who suffer subsequent industrial injuries." (*Baker v. Workers' Comp. Appeals Bd.* (2011) 52 Cal.4th 434, 439.) Section 4751 states such workers "shall be paid" additional compensation when their combined disabilities meet certain criteria. Section 4753 provides that Fund benefits "shall be reduced to the extent of any monetary payments received by the employee, from any source whatsoever, for or an account of such preexisting disability or impairment." (§ 4753.)[3] This includes SSDI payments based on a prior injury. (*Subsequent Injuries Fund v. Industrial Acc. Com. (Hanson)* (1963) 217 Cal.App.2d 322, 328.) Section 4753 "was enacted to avoid depletion of the funds in order to encourage the employment of physically handicapped persons and to prevent double recovery for the same disabilities." (*Ibid.*)

We agree with the Board that the Fund must prove its entitlement to a credit for SSDI and other "monetary payments" received by applicants. The burden of proof in workers' compensation proceedings "rests upon the party . . . holding the affirmative of the issue." (§ 5705.) Applicants must initially show they are entitled to subsequent injury benefits under section 4751 by proving: (1) they were "permanently partially disabled" and (2) they "receive[d] a subsequent compensable injury resulting in additional permanent partial disability."[4] The

_____

[3] Section 4753 includes several exceptions to mandatory reduction, including payments received for disabilities incurred in the armed forces. These exceptions are not at issue.

[4] Section 4751 states in relevant part: "If an employee who is permanently partially disabled receives a subsequent

Fund must then show it is entitled to reduce the applicant's subsequent injury benefit under section 4753, and, if so, the "extent" it may reduce those payments. Both sides must meet their burden by a preponderance of the evidence. (See § 3202.5 ["All parties and lien claimants shall meet the evidentiary burden of proof on all issues by a preponderance of the evidence in order that all parties are considered equal before the law"].) Section 4753's mandate that compensation "shall be reduced" does not, as the Fund contends, relieve the Fund of this burden. Nor does section 4751's similar language relieve applicants of their burden to prove eligibility for benefits.

The Fund argues public policy justifies placing the burden of proof on applicants. It first cites applicants' greater access to information about the basis of their disability payments. We are not persuaded. The Fund may conduct discovery before trial into

compensable injury resulting in additional permanent partial disability so that the degree of disability caused by the combination of both disabilities is greater than that which would have resulted from the subsequent injury alone, and the combined effect of the last injury and the previous disability or impairment is a permanent disability equal to 70 percent or more of total, he shall be paid in addition to the compensation due under this code for the permanent partial disability caused by the last injury compensation for the remainder of the combined permanent disability existing after the last injury as provided in this article; . . ." The subsequent injury must meet one of two disability rating thresholds: (1) 5 percent for "opposite member" injuries, i.e., when an applicant has an existing injury to "a hand, an arm, a foot, a leg, or an eye, and the permanent disability resulting from the subsequent injury affects the opposite and corresponding member", or (2) 35 percent "when considered alone and without regard to or adjustment for the occupation or the age of the employee, . . ."

the basis of any source of payments subject to credit. (See § 5502, subd. (c) ["The case shall be set for trial when discovery is complete, or when the . . . judge determines that the parties have had sufficient time in which to complete reasonable discovery"].) This includes SSDI benefits. (See *Angell v. Subsequent Injuries Benefits Trust Fund* (2021) 86 Cal.Comp.Cases 419 (*Angell*) [WCJ properly ordered applicant to disclose information about SSDI payments when Fund sought credit under section 4753].)

The Fund next cites the Legislature's aim of conserving government resources as supporting its position. This aim is balanced, if not outweighed, by section 3202's mandate that workers' compensation "shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." The Fund should direct its concerns about the administration of section 4753 to the Legislature or the appropriate rulemaking body instead of the judiciary.

The Fund cites *Hanson* to argue the Board must reduce benefits unless an applicant can prove an SSDI award is based solely on a subsequent injury. We read the case differently. In *Hanson*, the hearing officer attributed 68 percent of an applicant's SSDI payments to "pre-existing disability or impairment" after taking evidence on the issue. The Board vacated the hearing officer's decision. The appellate court in *Hanson* reinstated that decision, holding the Fund was entitled to reduce subsequent injury benefits by that portion of SSDI the hearing officer found attributable to pre-existing disabilities. (See *Hanson, supra*, 217 Cal.App.2d at p. 329 ["if it can reasonably be said that the social security disability payments are in some part accountable to the preexisting liability . . . then some credit should be allowed"].) While *Hanson* confirmed the

8

Fund's right to *seek* credit for SSDI payments received by applicants, it did not hold the Fund was presumptively entitled to credit unless the applicant could prove otherwise.

Finally, the Fund contends the 26 percent permanent disability rating in the stipulated award creates an inference that 74 percent of her SSDI benefits are attributable to pre-existing disabilities. This is not so. "[T]he Fund is not bound by the prior adjudication of the employer's liability relative to the determination of its own obligation to make life pension benefit payments when it has not been joined." (*Subsequent Injuries Fund v. Workmen's Comp. Appeals Bd. (Royster)* (1974) 40 Cal.App.3d 403, 408, italics omitted.) "[W]hile the Fund may not relitigate the issue of the employer's liability in an attempt to increase [the employer's] obligation, it may litigate the question of the employer's liability so as to properly determine the extent of its obligation to the applicant." (*Id.* at p. 409.) The Fund was joined as a defendant six months after Vargas and her employer settled her worker's compensation case. We decline to read section 4753 as entitling the Fund to a presumptive SSDI credit based on a rating negotiated in a different context with a different party.

### *The Board's Findings on Section 4753 Reductions*

The Fund notes that Vargas had many pre-existing medical conditions and applied for SSDI benefits several months before injuring her foot in March of 2018. These facts do not establish she received SSDI benefits primarily "for or on account of" her pre-existing disabilities. The award letter Vargas received from SSA in December of 2018 said she "became disabled under our rules on April 18, 2018." This date fell less than three weeks after her March 2018 injury. The evidence at trial about Vargas's pre-existing disabilities came from medical reports prepared long

9

after she received her SSDI award letter.  Neither this letter nor any other exhibit states the basis of the award.

The Fund joined this case almost two years before trial and five months after the Board decided *Angell*.  In *Angell*, the applicant contended a discovery order directing her to obtain additional information from the SSA shifted the burden of proof to establish whether the Fund was entitled to a credit pursuant to 4753.  The Board disagreed.  It stated:  "[The Fund] is simply seeking discovery of information and documentary evidence related to applicant's admitted receipt of SSD benefits in order to meet *its* burden of proof regarding the section 4753 credit."  (*Angell*, *supra*, 86 Cal. Comp. Cases at p. 428.)  There is no record here of the Fund deposing Vargas or seeking her SSDI application materials.  The Fund declared ready for trial in March of 2023, received Vargas's pre-trial brief in April of 2023, and agreed to proceed without live testimony in May of 2023.  Its post-trial brief did not request additional discovery in the event the WCJ found the Fund bore the burden of proving section 4753 credit.  Having assumed it need not carry the issue, it did not shepherd the evidence required to prevail on the merits.

## DISPOSITION

We affirm the Board's order of October 20, 2023, denying the Fund's petition for reconsideration.  Vargas is awarded costs.

<u>CERTIFIED FOR PUBLICATION.</u>

CODY, J.

We concur:

GILBERT, P. J.          BALTODANO, J.

Deborah Rothschuller
Santa Barbara District Office
_____


Department of Industrial Relations, Ken Lau, Chief Counsel, Steven A. McGinty, Assistant Chief Counsel, and Thomas G. Routson, Staff Counsel, for Petitioner.

Ghitterman, Ghitterman & Feld, Russell R. Ghitterman and Benjamin P. Feld, for Respondent Nancy Vargas.

Allison J. Fairchild and Eric D. Ledger for Respondent Workers' Compensation Appeals Board.